# Grupp, Appellant, *v.* Philadelphia Rapid Transit Company.

*Negligence—Street railways—"Stop, look and listen"—Right angle collision.*

1. A traveler about to cross a street at a regular crossing is not bound to wait simply because a street car is in sight. Where the car is at such a distance from the traveler that he has sufficient time to cross, if the car is moving at the usual speed, he ought not to be charged with negligence as a matter of law if he proceeds.

2. Where the driver of a wagon in approaching a crossing looks, after he has cleared the house line, and sees a car three hundred feet away, and again looks as his team reaches the track and sees the car two hundred feet away, and he proceeds and the wagon is struck, the question of the driver's contributory negligence is for the jury.

*Evidence—Conflicting testimony—Number of witnesses—Case for jury.*

3. Where a witness makes a clear and direct averment of a fact, and this averment is positively contradicted by four other witnesses, the averment of the single witness must be submitted to the jury notwithstanding the preponderance of the contradictory evidence.

Argued Dec. 18, 1909. Appeal, No. 263, Oct. T., 1909, by plaintiff, from judgment of C. P. No. 2, Phila. Co., March T., 1906, No. 438, on verdict for defendant in case of Otto Grupp *v.* Philadelphia Rapid Transit Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

272 GRUPP, Appellant, *v.* PHILA. RAPID TRANSIT CO.

Statement of Facts—Opinion of the Court. [42 Pa. Superior Ct.

Trespass to recover damages for personal injuries. Before WILTBANK, J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for defendant. Plaintiff appealed.

*Error assigned* was in giving binding instructions for defendant.

*Harry G. Sundheim,* for appellant.—The case was for the jury: Finefrock v. Traction Co., 33 Pa. Superior Ct. 638; McFarland v. Ins. Co., 134 Pa. 590; Raulston v. Traction Co., 13 Pa. Superior Ct. 412; Iseminger v. Water & Power Co., 206 Pa. 591; Mortimer v. Beaver Valley Traction Co., 216 Pa. 326; Callahan v. Traction Co., 184 Pa. 425; Hamilton v. Traction Co., 201 Pa. 351; Beard v. Ry. Co., 3 Pa. Superior Ct. 171; Jones v. Ry. Co., 9 Pa. Superior Ct. 65; Jensen v. Street Ry. Co., 24 Pa. Superior Ct. 4.

*Thomas Leaming,* with him *Chester N. Farr, Jr.,* for appellee, cited: Timler v. Rapid Transit Co., 214 Pa. 475; Winter v. Ry. Co., 153 Pa. 26; Ehrisman v. Ry. Co., 150 Pa. 180; Darwood v. Traction Co., 189 Pa. 592; Greenwood v. Phila., etc., R. R. Co., 124 Pa. 572.

OPINION BY HENDERSON, J., March 3, 1910:

The plaintiff's appeal is from the judgment of the court below giving binding instructions for the defendant. The court assigned the contributory negligence of the plaintiff as the ground for this action. It is therefore necessary to consider the testimony introduced in the case. The plaintiff was employed as a teamster for a brewing company and was driving a team attached to a delivery wagon. The accident occurred between eleven and twelve o'clock in the forenoon at the intersection of York and Tenth streets in the city of Philadelphia. The plaintiff was driving southwardly along the west side of the latter street, and the street car was moving westwardly along York street. Evidence was introduced tending to show that as the plaintiff approached the track

when he cleared the house line he saw the car at a distance of about 300 feet. When the team reached the track he looked again and the car was about half a square away. The team was moving "at a pretty good walk." The driver then proceeded and after the team and wagon had passed over the track the car struck the rear end of the wagon at the back part of the hind wheel, or the projecting platform a little further back, forcing the wagon which weighed about 6,500 pounds over to the curbstone and against an awning post, breaking down the post, bending the axle of the wagon and throwing one of the beer barrels into the window of a nearby drug store. The car ran across the street and to the next street about 200 feet distant before it was stopped. The team was seen from the car when the latter was 300 feet away from the place of the collision and was in view of the motorman while the car moved that distance. The car was going very fast and could not be stopped by the motorman at the street crossing. The power was thrown off when the car was within about twenty feet of Tenth street. Such was the purport of evidence offered. It was alleged by way of defense that the brake was applied to the car but that the wheels slipped because it was a wet day. The testimony of the plaintiff was contradicted in some respects and in others corroborated by evidence offered by the defendant. The negligence attributed to the plaintiff was that he undertook to cross the track in front of the approaching car. The question in the case is, therefore, whether it was negligence per se for the driver of the wagon to attempt to cross the street car track when the approaching car was 200 feet away. That the plaintiff exercised care and diligence appears from his statement that he looked for a car as soon as his position on the street with reference to the houses permitted him so to do and that he looked again immediately before undertaking to cross and as he had but about twenty-five feet to travel to clear the track the car would have eight times the distance to cover to reach the point of contact. If the team was moving at a good walk the car needed a speed of probably twenty-five miles an hour to enable it to collide with the wagon. Was it clearly an act of imprudence on the

part of the driver to cross the track under such circumstances? It is not to be doubted that street railway companies have a superior right to the use of that portion of the streets occupied by their tracks. This right is qualified, however, by that of pedestrians and travelers with vehicles to cross the track in the exercise of care. It does not absolve a railway company from the exercise of care in like manner when using the public crossings. The public right is not relinquished; it is only subordinated to that of the railway company: Evers v. Traction Co., 176 Pa. 376; Callahan v. Traction Co., 184 Pa. 425; Raulston v. Traction Co., 13 Pa. Superior Ct. 412. A traveler about to cross a street at a regular crossing is not bound to wait simply because a car is in sight. So strict a rule would erect a legal barrier against the use of a large proportion of the intersecting streets by other means of travel than cars. Where a car is at such a distance from the traveler that he has sufficient time to cross if the car is moving at the usual speed, he ought not to be charged with negligence as a matter of law if he proceed. It is a necessary condition that the crossing of streets be made in front of moving cars, at street intersections in the cities. Persons so doing must use due care and are not permitted to take narrow chances, but there is a correlative duty to be performed by the company in running over the crossings. The plaintiff had a right to assume that the car would be run at the usual speed and in the usual manner, and if this had been done it seems not improbable that the accident would not have happened: Hamilton v. Traction Co., 201 Pa. 351. He was not chargeable with notice that the car was not under the control of the motorman and could not be stopped. We do not find such evidence of inattention and carelessness in the testimony offered for the plaintiff as supports the defense of contributory negligence. Indeed, the motorman, who had the best opportunity of any of the defendant's witnesses to observe what took place, attributes the accident to the action of the plaintiff in suddenly pulling on the reins and causing the horses to slacken. As the witness expressed it, "He (the driver) grabbed the lines and the horses kind of slowed up. I guess if he hadn't took hold of the lines he might have

cleared me." Another of the defendant's witnesses also testified that the driver "pulled his horses up" immediately before the collision. Whether this occurred and was the cause of the accident was a question for the jury. Timler v. Rapid Transit Co., 214 Pa. 475, is brought to our attention by the appellant as a controlling authority. An examination of that case shows, however, that it turned on the fact disclosed by the plaintiff's own evidence that "he disregarded his duty to look immediately before going upon the track," and such omission was held to be contributory negligence. It was said in the same opinion, however, after a discussion of the facts, "If he (plaintiff) had observed his duty to look immediately before going on the track the question of defendant's negligence in running the car at an excessive rate of speed might have been properly submitted to the jury. He did not do so, and the case turns not on the defendant's negligence, but on the contributory negligence of plaintiff." It also appeared according to the calculation set forth in the opinion by Justice ELKIN that according to the plaintiff's own estimate of distance and speed he had not time to cross the track and avoid a collision. In the case before us as has been noticed the plaintiff did look as his horses were at the rails and about to go onto the track, and in that respect his case differs from that just cited.

It is contended, however, that whether there was contributory negligence or not there was no evidence of the negligence of the defendant. We think, however, that this was also a question for the jury. There is evidence that the car was running at a high speed. This is not only shown by one or two of the witnesses, but the momentum with which it collided and the distance which it went after the collision tend to show that it crossed the street at an unusual speed, and when we observe that one of the plaintiff's witnesses in the car saw the team close to the track when the car was 300 feet distant the presumption is that the car could have been stopped before the wagon was reached, especially as the crossing was a stopping place. Moreover, it appears in the evidence of one of the defendant's witnesses that the power was only turned off when the car was about twenty feet from Tenth street. If the track

was "bad" as the motorman described it because it was wet it would be a proper question for the consideration of the jury whether the power ought not to have been turned off sooner than that, and this question would be all the more pertinent in the light of the motorman's evidence that his brakes did not hold. There was also evidence that the motorman jumped from the car when it was about fifteen feet from the wagon. The witness who testified to this fact was the keeper of a restaurant at the northeast corner of Tenth and York streets. He was standing on York street in full view of the car and had an opportunity to observe what occurred. He was contradicted on that point by the motorman, the conductor and two passengers in the car, and the court, while considering the fact an important one if it were proved and which would have induced him to submit the case to the jury, disregarded the evidence because the contradiction was so strong. There was a clear and direct averment of a fact by one witness and an equally positive contradiction of his testimony by the four other witnesses. Under such circumstances the credibility of the witness was for the jury, notwithstanding that there was a great preponderance of witnesses on the other side. The appearance of the witnesses, their manner of testifying and their opportunity for observation might have affected their testimony in the judgment of the jury. It was said in Grambs v. Lynch, 4 Penny. 243, to be the settled law that when a case depends upon oral testimony such testimony must be submitted to the jury; and in Reel v. Elder, 62 Pa. 308, the court said, "However clear and indisputable may be the proof when it depends upon oral testimony, it is nevertheless the province of the jury to decide, under instructions from the court, as to the law applicable to the facts, and subject to the salutary power of the court to award a new trial if they should deem the verdict contrary to the weight of the evidence." That part of the opinion in Holden v. Penna. R. R. Co., 169 Pa. 1, which held that the trial judge should have disregarded the testimony of the plaintiff because five witnesses of the defendant who were disinterested, unimpeached and had equally good opportunities of observation testified to the contrary has not

been approved and followed in subsequent cases; and in Cromley v. Penna. R. R. Co., 211 Pa. 429, it was said that it could not be approved on principle because it overlooks the well-defined distinction between the province of the court and that of the jury. In the case last cited the question was whether the husband of the plaintiff stopped before he drove onto the track. Only one witness testified that there had been a stop; five who had a better opportunity to see what happened testified that there had not been a stop. Under such circumstances it was said that the preponderance of the evidence should have led the jury to find for the defendant and on their failure so to do the court should have granted a new trial, but the court could not assume the decision of a disputed question of fact from conflicting testimony. Barnett v. Becker, 25 Pa. Superior Ct. 22, and Colonial Trust Co. v. Getz, 28 Pa. Superior Ct. 619, contain discussions of this subject and conclusions to the same effect. It may be that the jury would be little influenced by the testimony of the witness, but we think his credibility was for the jury. Our conclusion is after a careful examination of the case that it is not of that clear character which is necessary to sustain the action of the court in granting a nonsuit or giving binding instructions for the defendant.

The judgment is, therefore, reversed with a venire facias de novo.