## Louisville Railway Company v. Vessels' Administratrix.

(Decided June 19, 1914.)

### Appeal from Jefferson Circuit Court
### (Common Pleas, Second Division).

1. Trial—Continuance—Absence of Witness—Diligence.—A continuance will not be granted on account of the absence of a witness unless it appear that the party asking the continuance has used diligence to secure the personal presence or the deposition of the witness.

2. Trial—Continuance—Absence of Witness—Diligence—Discretion of Court—Error.—Where an affidavit for continuance on the ground of the absence of a witness showed that the subpoena was given to the sheriff more than five days prior to the day the case was set for trial, and that affiant did not know the witness was not in the city until the subpoena was returned, and that the last known address of the witness was given to the sheriff, it was error to hold that the affidavit failed to show diligence in ascertaining the whereabouts of the witness, and to refuse to grant the continuance or to permit the affidavit to be read as the deposition of the absent witness.

3. Witnesses—Rule Requiring Address in Subpoena—Reasonableness of Rule.—While in a large city a rule requiring a party to furnish to the sheriff the address of the witness is not unreasonable, yet it is unreasonable to requiire the address of the witness to be stated in the subpoena.

4. Street Railroads—Crossings—Reasonable Control of Cars—Warning.—It is the duty of the motorman operating a street car, in approaching crossings, to have the car under reasonable control, to give timely warning of its approach, to keep a lookout, and to use ordinary care to avoid injuring persons on or about to use the tracks; and one using the tracks has the right to rely on the motorman's giving timely warning of the approach of the car.

5. Street Railroads—Negligence—Personal Injury—Evidence.—In an an action by plaintiff against a street railroad company to recover damages for the death of her intestate, alleged to have resulted from defendant's negligence in failing to give timely warning of the approach of one of its cars, evidence examined, and held sufficient to take the case to the jury, and to sustain a finding in favor of plaintiff.

6. Street Railroads—Operation of Cars—Care Required—Instruction. —To relieve a street railroad company from liability for killing the driver of a milk wagon, on the ground that the decedent unexpectedly changed the course of his wagon and went upon defendant's tracks in front of the car, and that the motorman by ordinary care could not stop the car in time to prevent the injury, it must appear that the car was run at a reasonable speed; and it was not error to refuse an offered instruction telling the jury that the defendant's motorman was not bound to anticipate

that plaintiff's decedent would change the course of the wagon, and that said motorman was not required to check the speed of his car, with a view to averting a collision with the said wagon, until he saw, or by the exercise of ordinary care could have discovered, decedent's peril.

FAIRLEIGH, STRAUS & FAIRLEIGH, H. B. LEE and HUSTON QUIN for appellant.

EDWARDS, OGDEN & PEAK for appellee.

Opinion of the Court by William Rogers Clay, Commissioner—Reversing.

On January 25, 1913, Charles A. Vessels was struck and killed by a car owned and operated by the Louisville Railway Company. His administratrix, Susie Vessels, brought this action to recover damages for his death. From a verdict and judgment in her favor for $2,500 the railway company appeals.

The accident occurred under the following circumstances:

Decedent was a driver of a milk wagon. He had driven his horse and wagon to a point on the west side of Preston Street, just north of its intersection with Brandeis street, for the purpose of delivering milk to a customer by the name of Nussbaum, who conducted a grocery and saloon on the northwest corner of Preston and Brandeis Streets. At that time the horse was facing south. Decedent lived in the opposite direction. After remaining in the grocery a short time he returned to the wagon, and jumping in, began to turn his horse north towards his home. At that time a Preston Street car was proceeding south on the western track. When the horse had practically turned around and headed in the other direction the car struck the back of the wagon. Decedent was thrown into the street and run over by the car. The accident occurred about seven o'clock A. M., and all the witnesses agree that it was a dark and foggy morning.

Mr. Nussbaum testified that decedent drove slowly. The gong on the car was not sounded, and the car was going "mighty fast." After the car struck the wagon it ran less than 30 or 40 feet. N. F. Patton stated that the car was going "pretty fast." Did not hear the gong sounded. When he got to the corner he saw the horse and wagon standing perfectly still over the car track.

At that time the street car was about 40 feet distant. After the car struck the wagon the rear end stopped near Nussbaum's grocery, but a little further away. John C. Straub, a deputy sheriff, testified that the rear end of the car was about 20 feet beyond Nussbaum's. The horse was standing opposite the car. Mrs. Nussbaum testified that decedent left the store and got right into the wagon. He turned slowly around. His horse was walking. Did not hear the gong sounded. The car was going "awful fast." Her husband called to decedent, but decedent paid no attention to him. Decedent seemed to be in a hurry. He was standing in the wagon. The car ran about 30 feet.

For the defendant the motorman testified that it was a dark and foggy morning, and he rang the bell continuously as the car went out Preston Street, and rang it just before the accident. When he saw decedent's wagon it was standing by the curb. The horse was facing south. It was only 15 feet away when the wagon turned across the track. He immediately reversed the car, and did all in his power to stop it. From the time the horse began to cross the track his car went only 22 or 25 feet. After the car struck the wagon it went about eight feet. The car was going about five miles an hour. Did not see decedent look up when the gong was sounded. Was a few minutes behind time. The whole thing happened in a very short time. After the gong sounded it was too late for decedent to get out of the way. Prior to that time, however, witness had been sounding the gong.

(1)    The first error relied on is the refusal of the court to grant a continuance on account of the absence of J. F. Hudson, the conductor in charge of the car at the time of the accident, or to permit the affidavit for continuance to be read as the deposition of the absent witness. The affidavit was made by defendant's general superintendent. It sets out the facts to which Hudson, if present, would testify. Of the relevancy and materiality of these facts there can be no question. The only question is: Does the affidavit show due diligence? It appears from the affidavit that Hudson was in the defendant's employ at the time of the accident. A subpoena for Hudson was placed in the hands of the sheriff five days before the case was set for trial. At that time the last known address of the witness in Jefferson County was given to the sheriff. The subpoena was returned "not found."

The affidavit further shows that since the subpoena was returned affiant had been notified that Hudson was in Cincinnati, and affiant did not ascertain that the witness was not in Louisville until the subpoena was returned. It was then too late to take his deposition. Exactly on what ground the continuance was refused does not appear. It is claimed, however, that the action of the trial court was based on the fact that the subpoena did not contain the address of the witness. If so, that ground was insufficient, in view of the fact that the affidavit states that the last known address of the witness was furnished to the sheriff. The code does not require the address of the witness to be stated in the subpoena. Doubtless in a large city like Louisville, where it is impossible for the sheriff and his deputies to know the names and addresses of any large portion of its inhabitants, a rule requiring that the address of the witness be furnished to the sheriff is not unreasonable. The purpose of requiring the address of the witness to be stated in the subpoena is to enable the sheriff to find the witness. The same purpose may be accomplished by giving to the sheriff a written slip containing the address of the witness. That being true, we conclude that the rule requiring the address to be stated in the subpoena is unreasonable. We find nothing else in the affidavit tending to show a want of diligence on the part of the defendant. The accident happened January 25, 1913. On March 8th the case was set for trial on June 9, 1913. More than five days before the date the case was set for trial, a subpoena, with the last known address of the witness, was placed in the hands of the sheriff. While it is true that the witness had left defendant's employ, defendant had no reason to assume that because of this fact the witness had acutally left the city of Louisville. Having placed the subpoena in the hands of the sheriff five days before the case was set for trial, and having then given to the sheriff the last known address of the witness, and not having learned that the witness was out of the city until the subpoena was returned "not found," we conclude that defendant did all that could be reasonably required of it to procure the attendance of the witness. That being true, the trial court erred in refusing to grant a continuance.

(2) It is next insisted that the court erred in refusing to direct a verdict in favor of the defendant. This position is predicated not only on the claim that the evi-

dence fails to show negligence on the part of the defendant, but conclusively shows contributory negligence on the part of decedent. The accident in this case occurred at the intersection of Preston and Brandeis Streets. As has repeatedly been held, it was the duty of the motorman in approaching this crossing to have the car under reasonable control, and to give timely warning of its approach, to keep a lookout, and use ordinary care to avoid injuring persons on or about to use defendant's tracks. While defendant's motorman claims that the horse and wagon were standing perfectly still when he saw them at a point about 100 feet distant, and there was nothing to indicate that the horse would suddenly be driven across the track, at the same time this fact did not dispense with the duty of the motorman to have the car under reasonable control, and to give timely warning of the approach of the car. While the motorman says that he was going only five miles an hour, he admits that he was a few minutes late. The witnesses for the plaintiff say that the car was going "mighty fast" and "awfully fast." There is also evidence to the effect that the car was about 40 feet distant when the horse turned across the tracks. Three witnesses for the plaintiff say that the gong was not sounded. Under these circumstances, there was sufficient evidence of defendant's negligence not only to take the case to the jury, but to sustain its finding. Nor can we say as a matter of law that decedent himself was guilty of contributory negligence. The "stop, look and listen" doctrine had never been applied in this State. All that is required of the injured party is the exercise of ordinary care. Of course, if the evidence conclusively showed that proper warning of the approach of the car was given, and that decedent heard this warning, or that decedent saw the car approaching, and notwithstanding this fact, endeavored to cross in front of the car, a different question would be presented. In crossing the track decedent was not required to rely on his eyes alone. He had the right to rely on defendant's giving timely warning of the approach of the car. There being evidence that such warning was not given, we see nothing in the facts of this case to take it out of the general rule that the question of contributory negligence is ordinarily for the jury.

(3)   It is next insisted that the court erred in refusing the following instruction:

"The court instructs the jury that the defendant's motorman was not bound in the exercise of ordinary care to anticipate that plaintiff's decedent would change the course of the wagon at the time he appears from the evidence to have done so; and defendant's said motorman was not, in the exercise of ordinary care, required to check the speed of his car with a view to averting a collision with said wagon until he saw, or by the exercise of ordinary care could have discovered, decedent's peril."

This instruction was properly refused. While it is true that defendant's motorman was not bound to anticipate that the decedent would change the course of the wagon, yet he was still under the duty of having his car under reasonable control, and of giving timely warning of its approach. Nor is it true that the motorman was not required to check the speed of the car until, in the exercise of ordinary care, he could have discovered decedent's peril. Under such circumstances, the street car company cannot run its cars at an unreasonable rate of speed, and then claim that they are excused from liability on the ground that the person injured came so suddenly on the track in front of the approaching car that the motorman could not, in the exercise of ordinary care, prevent the injury. This principle applies only in cases where the car is being operated at a reasonable rate of speed. Netter's Admr. v. Louisville Ry. Co., 134 Ky., 678; Louisville Ry. Co. v. Buckner, 113 S. W. 90; Goldstein's Admr. v. Louisville Ry. Co., 115 S. W., 194; Louisville Ry. Co. v. Gaar, 112 S. W. 1130; Lexington Ry. Co. v. Van Laden, 107 S. W. 740, 32 Ky. L. R., 1047; Hymarsh's Admr. v. Paducah Traction Co., 150 Ky., 109, 150 S. W. 9; Louisville Ry. Co. v. Sheehan's Admx., 146 Ky., 168, 142 S. W. 221.

Judgment reversed and cause remanded for new trial consistent with this opinion.