## Kentucky Traction & Terminal Company v. Jenkins.

(Decided October 18, 1916.)

### Appeal from Fayette Circuit Court.

1. **Street Railroads—Injury to Pedestrian—Question for Jury—Evidence.**—In a pedestrian's action for personal injuries against a street railroad, evidence examined and held sufficient to justify the submission to the jury of the questions of excessive speed and of the failure to keep a lookout and give a reasonable warning of the approach of the car.

2. **Negligence—Personal Injuries—Instruction.**—The qualification of a contributory negligence instruction in the following language,

"Unless you believe further from the evidence that after said motorman saw or by the exercise of ordinary care could have seen the peril of the plaintiff if he so saw or could have seen such peril, he failed to use ordinary care to prevent injuring him and by reason of such failure the plaintiff was injured, you will in that event find for the plaintiff," examined, and held not prejudicial because of the failure to use the words "in time to have prevented the injury by the exercise of ordinary care."

3. Street Railroads—Operation of Cars—Care Required.—To excuse a street railroad company upon the ground that the person injured came on the track so close to the car that the motorman, by the exercise of ordinary care, could not have stopped it in time to prevent the injury, the car must have been operated at a reasonable rate of speed.

ALLEN & DUNCAN, WALLACE MUIR and RICHARD C. STOLL for appellant.

MAURY KEMPER and SCOTT & HAMILTON for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

This is a personal injury action, in which plaintiff, Al Jenkins, recovered of the defendant, Kentucky Traction and Terminal Company, a verdict and judgment for $3,200.00. The defendant appeals.

The accident occurred in the month of January, 1912, at about 5:30 p. m. Just prior to the accident Jenkins and a companion of his were in a saloon. Jenkins had been drinking and there was some evidence to the effect that he was intoxicated, though the weight of the evidence is to the contrary. His companion, however, was quite drunk. On leaving the saloon Jenkins took his companion to the latter's home on Jackson Street in the city of Lexington. After doing this Jenkins started for his own home, which was located on Breckenridge Street, some distance from Jackson Street. He proceeded west along the sidewalk on the north side of Breckenridge Street until he reached a point about three hundred feet from Jackson Street. At this place the company maintains a switch track in addition to its main track. As he started to cross over Jenkins says that he looked and saw no car approaching. He then proceeded diagonally across the tracks with his back turned towards the approaching car. As he stepped on the main track he was struck by the car and so injured that his foot had to be amputated. No warning of the approach of the car was

given and there was evidence to the effect that the car ran for some distance after striking Jenkins. The evidence for the defendant tends to show that the night was quite dark and that the car was running at a moderate rate of speed. The motorman says that the headlight on the car was effective for a distance of only from four to eight feet. He claims that he was on the lookout and did not see Jenkins until about four feet from him. The evidence in this respect is corroborated by that of the conductor. The evidence for the defendant also shows that the rear end of the car was stopped about twenty feet from the place of the accident. Though claiming that the car was moving at about eight miles per hour, the motorman admitted that the full current was turned on at the time, and that the speed which could be produced by the full current was about sixteeen miles per hour. In this connection he stated that the car had to go about one hundred feet before attaining its maximum speed. He, however, admitted that the full current was turned on after the car came around the corner at the intersection of Jackson and Breckenridge Streets, and the proof shows that the accident occurred about three hundred feet from this intersection. It further appears that there was snow on the ground at the time, and one witness says that a person could have been seen walking in the street for a distance of several hundred feet. Defendant's proof shows that the headlight was burning. On the contrary, there was some proof by the plaintiff that the headlight was not burning.

It is argued that the defendant was entitled to a peremptory instruction, because the evidence not only failed to show negligence on its part, but conclusively established the contributory negligence of the plaintiff. In this connection it is insisted that, even if the car was running at fifteen miles per hour, this speed was not excessive in the outskirts of the city where the accident occurred. It may be conceded that the question whether or not the speed of a car is excessive depends upon the time, place and circumstances of the accident. A rate of speed that would be excessive in the congested and business districts of a city might not be excessive in the outskirts of a city. A rate of speed that would be excessive in the night time might not be excessive in the day time. Except, however, in those instances where

the rate of speed, considering all of the circumstances, is so slow that ordinarily prudent and reasonable men could entertain but one opinion on the question, the question is for the jury. According to defendant's own showing in this case, the night was quite dark and the headlight was effective for a distance of only a few feet. Clearly, under these circumstances, the evidence that the speed of the car was fifteen miles per hour was sufficient to authorize the submission of the question of excessive speed to the jury.

It is likewise insisted that there was no proof of a failure to keep a lookout, but that on the contrary the motorman and conductor both testified that the motorman was keeping a lookout. The jury, however, under circumstances like these, are not required to accept as true the statements of the motorman and conductor. They had the right to take into consideration the statements of other witnesses, as well as all facts and circumstances surrounding the accident. There was proof that there was snow on the ground and a person walking in the street could have been seen for several hundred feet. In view of this evidence, and of the further fact that the motorman says that he saw plaintiff when only four feet distant from the car, the jury had the right to infer that a proper lookout was not maintained. In addition to the foregoing, it was also shown that no warning of the car's approach was given. It follows that the negligence shown was sufficient to take the case to the jury.

Nor can we say that the contributory negligence of the plaintiff was clearly established. He says that before starting across the tracks he looked to see if a car was approaching. The "stop, look and listen" doctrine is not in force in this state. All that a traveler is required to do is to exercise ordinary care to learn of the approach of the car and keep out of its way. In crossing the tracks of the street car company, the traveler has the right to assume that the car will be running at a reasonable rate of speed and that timely warning of its approach will be given. Viewing plaintiff's conduct in the light of this assumption, we cannot say, as a matter of law, that he was guilty of contributory negligence because he did not look just before stepping on the track. C. N. O. & T. P. Ry. Co. v. Winningham's Admr., 156 Ky. 434, 161 S. W. 506.

The instruction on contributory negligence is qualified by the following language:

"Unless you believe further from the evidence that after the said motorman saw or by the exercise of ordinary care could have seen the peril of the plaintiff if he so saw or could have seen such peril, he failed to use ordinary care to prevent injuring him and by reason of such failure the plaintiff was injured, you will in that event find for the plaintiff."

It is insisted that in lieu of the above the court should have used the following language:

"Unless you believe further from the evidence that the motorman saw or by the exercise of ordinary care should have seen the peril of the plaintiff in time to have prevented the injury by the exercise of ordinary care, and that the motorman after such time failed to use ordinary care to prevent injuring plaintiff and by reason of such failure the plaintiff was injured, etc."

It is suggested that under the qualification given by the court the jury could find for the plaintiff upon the ground merely that after the motorman discovered the plaintiff's peril he failed to use ordinary care to avoid injuring him, even though by the use of such ordinary care the injury could not have been prevented. We regard this criticism as more technical than substantial. By the qualification complained of the jury were plainly told that unless they believed from the evidence that after the motorman saw, or by the exercise of ordinary care could have seen, the peril of the plaintiff, he failed to use ordinary care to prevent injuring him, and by reason of such failure the plaintiff was injured, they should find for the plaintiff. Considering the instruction as a whole, the jury had the right to conclude that there was no failure to use ordinary care to prevent injuring the plaintiff, if, as a matter of fact, such care would not have prevented the injury. We are, therefore, of the opinion that the failure to insert in the instruction the words "in time to have prevented the injury by the exercise of ordinary care" was not prejudicial under the facts of this case. For the same reason we hold that a similar qualification of Instruction No. 3, bearing on the question of intoxication and contributory negligence, was not prejudicial.

Instruction No. 4 is as follows:

"If the jury believe from the evidence that plaintiff was upon or about to go upon defendant's track at a time when defendant's car was so close that same could not be stopped or checked by the motorman in charge thereof, by the exercise of ordinary care in the use of the means at his command, in time to avoid striking plaintiff, then the law is for the defendant and the jury will so find, unless his failure to so stop or check said car was prevented by the excessive and unreasonable rate of speed at which said car was then running, if it was so running."

This instruction is assailed because of the qualification "unless his failure to so stop or check said car was prevented by the excessive and unreasonable rate of speed at which said car was then running." The language complained of accords with the well settled rule in this state that in order to excuse a street car company on the ground that the person injured came on the track so close to the car that the motorman, by the exercise of ordinary care, could not have stopped it in time to prevent the injury, the car must have been operated at a reasonable rate of speed. Hymarsh's Amr. v. Paducah Traction Company, 150 Ky. 109, 150 S. W. 9; Netter's Admr. v. Louisville Railway Company, 134 Ky. 678, 121 S. W. 636; Louisville Railway Co. v. Gaar, 112 S. W. 1130; Louisville Railway Co. v. Byers, 130 Ky. 437, 113 S. W. 463.

Finding in the record no error prejudicial to the substantial rights of the defendant, the judgment is affirmed.