# Murphy *v.* Phila. Rapid Transit Co., Appellant.

*Negligence—Street railways—Speed of car—City ordinance—Penal ordinance—Strict construction—Evidence—Harmless error.*

1. In a case against a street railway company for the death of a pedestrian at a crossing, where the speed of a car is at issue, it is proper to admit in evidence, in connection with other proof as bearing on the question of speed, a city ordinance which provided that, "at all main street intersections within the built-up portion of the city," a safety stop should be made and the rate reduced to "not exceeding five miles per hour."

2. That the scene of the accident was in a "built up" portion of the city is established by proof that the intersecting streets were on the city plan, were opened and used by the public; that one of the streets was the beginning of an officially numbered and marked block; that some houses abutted on one of the streets; and that

the street railway company recognized the intersection as a regular street crossing by the placing of car-stop signs on the near sides of one of the streets.

3. "Main street intersections," within the meaning of the ordinance, includes a locality where one street meets another street at right angles, but is not extended on the opposite side beyond it.

4. In determining the scope of such an ordinance which is penal in character, there must be a strict construction of the language employed, and its terms must not be extended by implication.

5. The question whether the entry of one street into another, without continuance on the farther side, comes within the meaning of the ordinance, is a question for determination by the court.

6. If, however, such question was left to the jury, and there was a verdict for the plaintiff, the submission did no harm, as the court would have been compelled to answer the question affirmatively.

*Negligence—Street railways—Crossings—Death of pedestrian— Presumption as to care—Physical facts—Contributory negligence —Appeals—Testimony—Inferences.*

7. In an action against a street railway company for the death of a pedestrian at a crossing, there is a legal presumption that decedent took reasonable precaution to protect himself from danger, and did what seemed to him to be necessary to effect his safety by looking and listening.

8. Such rule of law gives way when the facts clearly and inevitably show the contrary to be true, and that the one injured was voluntarily testing the danger, and recklessly taking an unwarranted chance in attempting to pass in front of a car.

9. But before this can be declared as a matter of law, on appeal, all of the testimony must be considered in the light most favorable to the plaintiff, giving to him the benefit of all proper inferences to be drawn therefrom.

10. The burden of proof in such case is on the claimant to make out a case free from contributory negligence, but not to furnish evidence to disprove its presence.

11. A pedestrian is not bound to wait at a crossing until a car passes, simply because it may be seen in the distance.

12. If, in the exercise of ordinary prudence, there is apparent opportunity to cross safely, it is not contributory negligence to attempt to do so.

13. A pedestrian has the right to assume that the motorman will use due caution in controlling his car.

Argued December 2, 1925. Appeal, No. 386, Jan. T., 1925, by defendant, from judgment of C. P. No. 5, Phila.

Co., Sept. T., 1921, No. 2925, on verdict for plaintiff, in case of Mary Murphy v. Philadelphia Rapid Transit Co. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.   Affirmed.

Trespass for death of plaintiff's husband.   Before HENRY, P. J., specially presiding.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $5,200.   Defendant appealed.

*Error assigned* was, inter alia, refusal of defendant's motion for judgment n. o. v. quoting record.

*Russell Duane* with him *Layton M. Schoch,* for appellant.—This case is ruled by Carroll v. R. R., 12 W. N. C. 348.

The accident was not less "instantaneous" in the legal sense because the deceased was midway between the rails when struck: Boring v. R. R., 211 Pa. 594; Cunningham v. Transit Co., 240 Pa. 194; Warner v. Ry., 141 Pa. 615; Holmes v. Traction Co., 199 Pa. 229; Crooks v. Ry., 216 Pa. 590; Flynn v. Rys., 234 Pa. 335; McVaugh v. Transit Co., 221 Pa. 518.

In view of the uncontradicted facts, plaintiff's case is in no way aided by the presumption that the deceased "looked and listened" before attempting to cross the track: Myers v. R. R., 150 Pa. 386; Flanagan v. R. R., 181 Pa. 237; Hess v. R. R., 181 Pa. 492; Baker v. R. R., 182 Pa. 336; Blaney v. Traction Co., 184 Pa. 524; Ellis v. R. R., 216 Pa. 415; Smith v. Transit Co., 252 Pa. 435; Lukachyk v. George, 281 Pa. 402.

The court below was in error in holding that the Philadelphia Ordinance of June 27, 1913 (Ords. 1913, page 226), in any way affected or diminished the contributory negligence of the deceased, and that it converted what would otherwise have been a question for the court into

a question for the jury: Atwood v. Connecticut Co., 82 Conn. 539; Sullivan v. Chauvenet, 282 Mo. 649.

*Benjamin O. Frick,* for appellee.—Decedent was not contributorily negligent: Mountain v. Glass Co., 263 Pa. 181; Wiles v. Emerson-Brantingham Co., 267 Pa. 47; Backstrom v. Kaufmann, 266 Pa. 489; Clinger v. Director General, 271 Pa. 88; McDonald v. Pittsburgh, 278 Pa. 485; Wall v. Pittsburgh, 205 Pa. 48; Weiss v. R. R., 79 Pa. 387; Hanna v. Ry., 213 Pa. 157.

Decedent had the right to rely not only on the custom of the cars to stop, but also the duty to reduce the speed to the safety stop limit fixed in the city ordinance: Schmidt v. P. R. T. Co., 253 Pa. 502; Penna. R. R. v. Ogier, 35 Pa. 60; Killmeyer v. Wheel Co., 243 Pa. 110.

The Philadelphia ordinance of June 27, 1913, was admissible and applicable: Backstrom v. Kaufmann, 266 Pa. 489; Kastle v. Balthaser, 4 Pa. D. & C. R. 11; Springfield Road, 73 Pa. 127; Pittsburgh v. Cluley, 74 Pa. 259.

OPINION BY MR. JUSTICE SADLER, January 4, 1926:

On the morning of December 24, 1920, plaintiff's husband, on his way to work, walked eastwardly along the south side of Duncannon Avenue, in the City of Philadelphia, a sixty-foot street, which enters into another highway, known as the Old York Road. A double track railway is constructed on the latter, and signs are placed on the southeast and northwest corners indicating, in each instance, that cars will be brought to a stop on the near side of the crossing. In attempting to pass over the highway at the usual place, Murphy was struck by a car of the defendant, coming southwardly, and so seriously injured that, in consequence, death resulted the next day. This action was brought by the widow on behalf of herself and children to recover damages from the traction company. The negligence charged was the failure to give due warning of the approaching car by

ringing the gong, or otherwise, and that it was moved at such undue speed as to render reasonable control by the motorman impossible. The court refused to grant a nonsuit, or give binding instructions for the defendant, as requested, and a verdict was returned for the plaintiff. From the judgment entered defendant appealed.

The first question raised is the sufficiency of the evidence to establish the absence of any adequate warning of the advance of the car, or that it was improperly operated. There was some proof of the ringing of the bell after the north building line of Duncannon Avenue had been passed, but it is now admitted by defendant that the trolley was traveling at an excessive rate, as the jury found, a conclusion amply justified by the testimony. As indicating what was a reasonable speed, a municipal ordinance was offered, against objection, wherein it is provided that a safety stop shall be made "at all main street intersections within the built-up portion of the city," and the rate be reduced at such points to "not exceeding five miles per hour." It further enacted that, in other than a named central district, of which the locus in quo was not a part, an "average of twelve miles per hour" shall be the limit. The admission of this ordinance forms the basis of the three assignments of error which complain of portions of the charge in which it is referred to. It was properly received, in connection with other testimony, as some evidence of negligence in operating the car (Lederman v. P. R. R. Co., 165 Pa. 118; Connor v. Electric Trac. Co., 173 Pa. 602; Foote v. American Product Co., 195 Pa. 190; Bell v. Jacobs, 261 Pa. 204; Davidson v. Schuylkill Trac. Co., 4 Pa. Superior Ct. 86), and for this purpose alone, as appears by the instructions to the jury.

It is now urged that the proof did not sufficiently disclose the scene of the accident to be a "built-up" portion of the city, and, therefore, the municipal regulation of operation of cars was inapplicable. There was testimony to show that Duncannon Avenue and the Old

York Road both appeared upon the city plan, and were opened and used by the public.   The former was the beginning of an officially marked block, numbered 5200, and recognized by defendant company as a regular street crossing by the placing of car-stop signs on the near sides of the avenue.   Some houses abutted the west side of the Old York Road, though on the east the Garrett home and a library were the only structures erected. There was sufficient to justify a finding by the jury, to whom the question was submitted, that the locality was of the character contemplated by the ordinance.

Again, it is said, assuming the district to be "built-up," the regulation applies in terms only to street "intersections," and Duncannon Avenue was not of the designated class, since it entered the Old York Road at right-angles, but did not extend beyond the east side, and therefore cannot be said "to cross over" it, a meaning which, it is insisted, must be ascribed to the words used. In determining the scope of the ordinance, which made certain acts unlawful, there must, of course, be a strict construction of the language employed, and, as it is penal in character, its terms are not to be extended by implication.   The jury was permitted, in the present case, to say whether the circumstances here showed the joinder of the two streets to have constituted a "main intersection."   This was a question which should have been passed upon as a matter of law, but its submission could have worked no harm to defendant, since the court would have been compelled to so instruct.   That the streets were regularly ordained public thoroughfares was not in dispute, and whether the entry of one into the other, without continuance on the farther side, came within the meaning of the ordinance, was a question for legal determination.

The correct construction of the word "intersection" as used must be ascertained by reference to the context in which it appears: 33 C. J. 474.   The subject-matter and the objects sought to be attained, as well as the

legislative purpose in enacting it, must be taken into consideration, and its language should receive an interpretation which will render it harmonious with that intention. The evident design of councils was to prevent collisions between street cars and those approaching from other thoroughfares. To guard against such possibilities, the requirement of reduced speed at crossing points was imposed. The danger to be avoided was equally as great when entering from one highway into another, whether the former continued on the opposite side or not.

This construction of the word employed is reasonable, and is the one generally recognized as proper under ordinances or statutes, intended to protect the traveling public, where the same language appears. Attention may be called to Mapp v. Holland, 138 Va. 519, 122 S. E. 430, 37 A. L. R. 478, where the subject is fully considered, and to the many cases cited in notes 21 A. L. R. 979, and 31 A. L. R. 488, where the authorities of other states are collected. Appellant calls attention to the contrary conclusion reached in Missouri and Connecticut, but the decisions referred to are not convincing, and, in the latter state, the legislature has, by statute, set forth the true rule to be applied since Atwood v. Connecticut Co., 82 Conn. 539, 74 Atl. 899, relied on here, was determined: Rohde v. Nock, 101 Conn. 439, 126 Atl. 335. No consideration of the question by any of our appellate courts is found, but the interpretation of the word, as contended for by the appellee, has been impliedly approved: Springfield Road, 73 Pa. 127; Taylor v. Bland, 77 Pa. Superior Ct. 551. We are of the opinion that the ordinance involved was applicable to the location where the accident happened in the present case, and was to be considered by the jury as some evidence that the speed of the car, at the intersection, was unreasonable.

The question of negligence was contested at the trial, but is now admitted. Defendant insists, however, that

no recovery is permissible because of contributory negligence of the deceased.   Duncannon Avenue was approached by the car causing the injury on a downgrade, at a high rate of speed, and failed to slow down at the safety stop on the north side.   Murphy was on the south crossing, having left the sidewalk, and reached the center of the first track, when struck.   The car was observable for five or six hundred feet to the north, and, at the time he passed the zone of safety, which included space sufficient to accommodate the overhang of the trolley, and put his foot on the first rail, the car had not passed the safety stop, but was about sixty feet from him.   He was committed to an advance, and had less than three feet to move to the east to effect a clearance when hit.   During the short time elapsing, the car passed over the intervening space, the brakes not being applied until the corner had been passed, and was not stopped until it had gone 124 feet beyond the point of impact.

There is a legal presumption that decedent took reasonable precaution to protect himself from danger, and did what seemed to him to be necessary to effect his safety by looking and listening.   Of course, this rule of law gives way when the facts clearly and inevitably show the contrary to be true, and that the one injured was voluntarily testing the danger, and recklessly taking an unwarranted chance in attempting to pass in front: Cubitt v. N. Y. C. R. R. Co., 278 Pa. 366.   Before this can be declared as a matter of law, on appeal, all of the testimony must be considered in the light most favorable to the plaintiff, giving to him the benefit of all proper inferences to be drawn therefrom: McDonald v. Pittsburgh, 278 Pa. 485.   The burden is on the claimant to make out a case free from contributory negligence, but not to furnish evidence to disprove its presence: Martin v. South Penna. Trac. Co., 261 Pa. 96.

It was the duty of Murphy to make proper observation, and refrain from taking undue risks.   The pedestrian is not bound, however, to wait upon a crossing until a

car passes, simply because it may be seen in the distance:
Callahan v. Phila. Tr. Co., 184 Pa. 425; Wright v. Pitts-
burgh Rys., 223 Pa. 268; Henderson v. United Trac. Co.,
202 Pa. 527; Grupp v. P. R. T. Co., 42 Pa. Superior Ct.
271.   If, in the exercise of ordinary prudence, there was
apparent opportunity to cross safely, it was not con-
tributory negligence to attempt to do so.   Murphy had
the right to assume the motorman would use due caution
in controlling his car, and, at the time he stepped on
the first rail, the safety stop, where normally speed
would be reduced (Schmidt v. P. R. T. Co., 253 Pa. 502),
had not been passed by the trolley, thus differentiating
Flynn v. Pittsburgh Rys., 234 Pa. 335, specially de-
pended upon by appellant here, in connection with Cun-
ningham v. P. R. T. Co., 240 Pa. 194, in which case the
entry on the track and the accident were simultaneous,
but in those cases there was no testimony to show lack
of alertness on the part of the motorman.   In Shields v.
P. R. T. Co., 261 Pa. 422, 426, both of the authorities
mentioned are referred to and distinguished, and this
court said: "The rights of the pedestrian and the street
railway company are mutual, and each is bound to exer-
cise the care required by the circumstances.   The danger
the pedestrian is bound to foresee and avoid is that of
being injured by cars operated in a proper and legal
manner."   He has a right to rely on the assumption that
all persons will use ordinary care to protect him (Young
v. P. R. T. Co., 248 Pa. 174; Wagner v. P. R. T. Co., 252
Pa. 354), and the mere failure to anticipate the negli-
gence of another does not defeat an action for the in-
juries sustained: Knobeloch v. P. & N. C. Ry. Co., 266
Pa. 140; Simon v. Lit Bros., 264 Pa. 121.

Under the facts here disclosed, the question whether
plaintiff's husband was careless in attempting to cross,
observing, as he did, the car sixty feet distant, when he
had every reason to believe the motorman had it under
reasonable control, was for the jury, and, in submitting
the controversy, we see no error.

The judgment is affirmed.