COMMUNITY TRACT. CO. v. RENO.

Ohio Appeals, 6th Dist., Lucas Co.

No. 2033. Decided May 28, 1928.

**First Publication of This Opinion.**

Syllabus by Editorial Staff.

**RAILROADS—Automobiles (50 Ai)**

(500 D2) Neither the operators of street cars nor automobiles in turning from one street to another, have any preferential right over pedestrians, who, in conformity with proper signal authorizing and directing them to do so, are crossing the street; and have not the right, under any and all circumstances, to proceed around the corner from one street to another without stopping.

Error to Common Pleas.

Judgment affirmed.

Tracy, Chapman & Welles, Toledo, for Community Traction Co.

Deeds & Cole, Toledo, for Reno.

STATEMENT OF FACTS.

The Community Traction Company was defendant and Pearl Reno was plaintiff in an action commenced by the latter in the Court of Common Pleas.

On February 26, 1927, the plaintiff, a passenger on a street car of the defendant known as a Bancroft Belt car proceeding easterly on Adams Street, alighted therefrom at the corner of Adams and Superior streets, which are intersecting streets. The route of the street car was easterly on Adams Street and southerly on Superior Street. After alighting from the street car plaintiff went to the Superior Street side of the southwesterly corner of Adams and Superior Streets and waited at the curb until the traffic officer stationed at this street intersection gave the signal for pedestrians and traffic on Adams Street to proceed easterly across Superior Street. This signal also permitted the street car to proceed on its way from Adams Street to and upon Superior Street. The signal to proceed having been given, the plaintiff walking and the street car operated by the motorman thereon, proceeded, the one to cross Superior Street, the other to turn from Adams onto Superior Street. While so crossing Superior Street plaintiff was struck by the fender of the car and seriously injured.

Judgment was entered by the trial court upon a verdict in favor of plaintiff for $5,000.00 and defendant seeks by these proceedings in error to reverse this judgment.

The evidence is in conflict as to where the street car was when plaintiff stepped upon the track upon which it was proceeding.

Plaintiff testified that she looked both ways on Superior Street before starting to cross, that the way was clear, that the street car from which she had alighted was "standing still" when she started across Superior Street and that she had but one step to go to be over the last rail of the track when the car hit her. The traffic officer testified that other people were crossing Superior Street ahead of the street car at the time Mrs. Reno was crossing, and that some had passed over and others were proceeding easterly across Superior Street "but the car stopped them by going that way." He stated also that plaintiff had crossed the track and was about a foot and

a half therefrom when hit by the left front fender of the car as it swung easterly from the track about two feet in making the turn. The specific acts of negligence alleged in the amended petition are that:

"said defendant carelessly and negligently operated said street car from said southerly track on Adams Street upon and over said curved portion of track onto said westerly track in said Superior Street without having said car under control and without keeping a lookout ahead and without sounding a gong or signal of the approach of said car to plaintiff at said time and at a high and dangerous rate of speed, towit: about fifteen (15) miles per hour and without slackening the speed of said car or bringing said car to a stop onto and against plaintiff bringing the left front part of said car against plaintiff inflicting the injuries hereinafter described."

LLOYD. J.

There is no evidence in the record that the speed of the car in rounding the curve from Adams to Superior Street was more than five or six miles an hour, but even that speed, under the facts and circumstances in evidence, might have been found by the jury to have been a failure to exercise ordinary care, and it may be that the jury found that the circumstances were such as to have required the motorman, in the exercise of ordinary care, to have stopped the car and have waited until plaintiff had crossed the track upon which it was being operated. Neither the operators of street cars nor of automobiles, in turning from one street to another, have any preferential right over pedestrians who, in conformity to a proper signal authorizing and directing them so to do, are crossing the street, and have not the right, under any and all circumstances, to proceed around the corner from one street to another without stopping, anticipating and expecting that pedestrians will run or jump backwards or forwards, as the case may be, to avoid injury. Ordinary care may require that the street car or automobile be stopped and wait for the pedestrian or that the pedestrian stop and wait for the street car or other vehicle to pass. What either should do in the exercise of ordinary care depends entirely upon the facts and circumstances of the particular case. In the instant case there is evidence that the plaintiff was across the track and was hit by the fender of the car as it swung around the curve onto Superior Street, and if the jury believed this testimony, then it might very well have found that the motorman did not exercise the care which the law imposes and that his negligence was the proximate cause of the injury sustained by the plaintiff. The law of Ohio provides that:

"Pedestrians shall not step into or upon a public road or highway without looking in both directions to see what is approaching."

Assuming that this statutory provision applies to the facts and circumstances of the instant case, or that the exercise of ordinary care would so require, plaintiff testified that she did so look before proceeding to cross Superior Street, that the street car was "standing still" and that the way was clear. Having done this, as the jury may have found she did, and the traffic signal permitting her lawfully to proceed, in our judgment she was not required at every step to be looking in every direction to see whether or not she was in danger. It was for the jury to say whether or not the defendant was negligent and

whether or not, if negligent, such negligence was the proximate cause of plaintiff's injuries, and also it was for the jury to say whether or not the plaintiff was guilty of negligence proximately contributing to her injuries. We have no hesitancy in concluding that the court did not err in refusing to direct a verdict for the defendant and that the verdict and judgment are not manifestly against the weight of the evidence.

Finding no errors in the record prejudicial to the plaintiff in error, the judgment is affirmed.

(Richards and Williams, JJ., concur.)