KATHERINE CLANCEY

*vs.*

CUMBERLAND COUNTY POWER & LIGHT COMPANY.

Cumberland.    Opinion August 12, 1929.

*William B. Mahoney,*
*Eugene F. Martin,* for plaintiff.
*Verrill, Hale, Booth & Ives,* for defendant.

SITTING: WILSON, C. J., PHILBROOK, DUNN, BARNES, BASSETT, JJ.

BASSETT, J. An action to recover for personal injuries resulting from the plaintiff's being struck, while crossing the street, by an electric express car of the defendant. At the close of the evidence, the presiding Justice on motion directed a verdict for the defendant with the stipulation that, if the Law Court sustains the exception taken by the plaintiff to the granting of the motion, judgment should be entered for the plaintiff and the case remanded

to the court below for hearing on damages. The case comes up on the exceptions.

The plaintiff, a woman sixty-five years old, at about quarter after four in the afternoon of July 16, a fair day, was crossing Washington Avenue from east to west in the city of Portland between Cumberland Avenue and Oxford Street, which intersect Washington Avenue. Washington Avenue is one of the main thoroughfares leading from Portland to the so-called Gray Road and Atlantic Highway, which are two main routes for traffic in and out of Portland. The avenue is approximately forty-two feet wide and has two lines of trolley tracks in the middle and level with the street. The distance from the easterly curb to the nearest or easterly rail of the easterly and outbound track is fourteen feet. The width of each track is 4.71 feet. The distance between the westerly rail of the outbound and the easterly rail of the inbound track is 4.3 feet. The total distance therefore from the easterly curb to the easterly or nearest rail of the inbound track is approximately twenty-three feet. Washington Avenue from Cumberland Avenue northerly for three-eights of a mile is straight.

The plaintiff, who had lived in the vicinity for years and crossed the street many times, had been making a call at a house on the easterly side of Washington Avenue and two houses northerly from Cumberland Avenue. She walked down the steps, across the sidewalk to the curb, and started straight across the street. There was no crosswalk.

The electric car of the defendant was an express or freight car carrying express for the Atlantic Express Company. It weighed about twenty tons empty, was partially loaded and inbound. It was about twelve feet high and painted a dark color. It had an air-brake and a whistle but no bell. It was being operated by a motorman sixty-five years old with between twenty-nine and thirty years' experience as a motorman. Standing beside him in the front vestibule and on his left, the side nearest the plaintiff, was the messenger of the Express Company.

The plaintiff's eyesight and hearing were, as she testified, as good as ever. She looked both ways as she left the curb, but did not see the electric car then or until it hit her. She saw automobiles coming from her right, the same direction as the car, and passing

on the other or westerly side of the street. She did not see the automobile approaching from her left. Seeing only automobiles on the other side of the street and that they were passing, she started straight across without thereafter stopping or looking in either direction or to see if anything was coming on the car tracks. She was hit by the front of the car on its left side.

The eyewitnesses of the accident were the motorman; the express messenger; the driver of an automobile, which approached the plaintiff from her left, which she did not see and which was stopped a short distance from her to let her pass in front by the driver, who saw her leaving the curb; a man riding in the rear seat of the automobile; and a bystander at the corner of Washington and Cumberland Avenues about thirty-five feet away.

From their testimony, it appeared that the motorman saw the plaintiff who was in plain sight of him, some seventy-five or one hundred feet away, as she was crossing the sidewalk and about to leave the curb. He blew the whistle, applied the brake and slowed the car, which had been traveling about ten miles an hour, so that just before it struck the plaintiff, it was moving very slowly, "barely moving." While the express messenger used the word "stopped," it was clear from his testimony, and the jury could not have properly understood otherwise, that he meant the car was moving very slowly and not that motion had ceased. The plaintiff, as she reached a point either between the rails of the easterly track or between the two tracks, looked up toward the car and stopped. The motorman thereupon loosed the brake and began to build up the power. The plaintiff suddenly started forward. The motorman reversed the power and stopped the car within four feet.

If the jury believed that the plaintiff, as she said, looked both ways before she left the curb and then without further looking or listening kept straight on across the street until struck by the car, they must have concluded that she would not have been struck had she been using due care under the circumstances.

She was not guilty of negligence as a matter of law in attempting to cross the street at the point where she did. *Page* v. *Moulton*, 127 Me., 80. She was not bound as a matter of law to look or listen before she crossed the car tracks, *Marden* v. *Street Railway*, 100 Me., 41; or, being about to cross a public street, to look or

listen for approaching vehicles, *Shaw* v. *Bolton*, 122 Me., 234. But she was bound to exercise a degree of vigilance and caution commensurate with the situation. *Philbrick* v. *A. S. L. Railway*, 107 Me., 429. A pedestrian about to cross a street must use the care and prudence of a prudent man under like circumstances, having in mind his own safety. The law does not undertake further to define the standard. It does not undertake to say "how often he must look or precisely how far or when or from where." *Shaw* v. *Bolton*, supra; *Sturtevant* v. *Ouellette*, 126 Me., 558. Failure to look or listen may be strong evidence of negligence. *Shaw* v. *Bolton*, supra; *Sturtevant* v. *Ouellette*, supra. Electric railroad tracks in a city street are places the crossing of which has elements of danger so that no one should come toward them without senses alert and used, or should attempt to pass over them without reasonable regard for his own safety. *Philbrook* v. *Atlantic Shore Line Railway*, supra; *Blanchette* v. *Railway*, 126 Me., 40, 42. Foot passengers in crossing streets should carefully observe the movements of street cars. *Welch* v. *Street Railway*, 116 Me., 191, 194. The plaintiff was familiar with the place, knew the car tracks were there, and had seen cars passing. Conditions as to other traffic may require additional vigilance concerning electric cars.

Mere looking is not sufficient. One is bound to see what is obviously to be seen. *Blanchette* v. *Railway*, supra. There was no evidence that the car was going at a high rate of speed. All the witnesses except the plaintiff, who knew nothing of the movements of the car, agree that the car was slowing from the time she left the curb until at the contact it was moving very slowly, so that, since within that time the plaintiff walked not more than twenty-three feet, the car must have been near at hand. The two men in the automobile and the bystander, all of whom were looking toward the plaintiff, saw the car. The day was bright. There was nothing to interfere with her vision of the car.

The car itself with its heavy rumble must have made some noise. The driver of the automobile, who was a little farther away from the car than the plaintiff, heard, as did the express messenger, the whistle sounded.

That the plaintiff on her own story, without looking after she left the curb, walked straight on to the car tracks neither seeing

nor hearing the car, shows such want of attention and care under the circumstances that the only reasonable conclusion which the jury could have drawn was that, had she been using the care and prudence of a prudent person under like circumstances, having in mind her own safety, her collision with the car would not have occurred. If negligence of the motorman be assumed, she must have been contributorily negligent.

Nor would the "last clear chance" rule apply, because the plaintiff's negligence would have been progressive and actively continuing up to the point of collision. *Bechard* v. *Railway Company*, 122 Me., 236, 238.

If, on the other hand, the testimony of all the other witnesses but the plaintiff had been accepted by the jury, and it does not seem that they could reasonably have come to any other conclusion, the plaintiff stopped at a point either between the rails of the nearest or outbound track or between the two tracks, in either event not over eight feet in distance from the car, and looked toward it. Up to her so doing, there was no evidence that the motorman had failed to use due care. She had been on the sidewalk in plain sight. The motorman saw her and that she intended to cross the street. He at once applied the brakes, cut off the power so that the car was "coasting," and slowed the car until it barely moved.

The place was not a stopping place for cars or a regular street crossing or a street junction. The car was not a passenger but a freight car. That the plaintiff was approaching the track in front of the car did not of itself oblige the motorman to stop the car; nor, on the other hand, did the car have the right of way. The track in front of the car was a place of danger. The plaintiff's stopping where she did was an indication of her intent to wait for the car to pass. The motorman therefore might assume, at all events until the contrary appeared, that she would continue standing at the side of the track and not attempt to cross in front of the car. He was not bound to anticipate negligence on her part. *Dill* v. *Railway Co.*, 126 Me., 3.

The motorman, not being bound under the circumstances to stop the car, let on the power in order to proceed. Just as he did so, the plaintiff, putting her head down, made a quick running step forward. The motorman reversed the power, the most effective method

to stop the car quickly, and did stop it within four feet.

We think that the only reasonable conclusion which the jury could have drawn from the evidence was that the collision between the plaintiff and the car was due, not to any negligence of the motorman, but to the negligence of the plaintiff herself; that her own negligence was the proximate cause, *Welch* v. *Street Railway*, supra; and that a verdict otherwise could not have been maintained.

When upon the evidence presented a verdict for the plaintiff can not be sustained, it is the duty of the presiding Justice to direct a verdict for the defendant. *Brown* v. *Railroad Company*, 127 Me., 387, 393.

*Exception overruled.*