## Louisville Railway Co. v. Breeden.

(Decided Dec. 21, 1934.)

96

LEE & KRIEGER for appellant.

LUKINS & JONES for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

About 7:30 p. m., May 13, 1933, Mollie M. Breeden, a woman 71 years of age, while walking across Twenty-Eighth street in an eastwardly direction, near where it intersects with Dumesnil street, was struck and injured by a street car going northwardly on Twenty-Eighth street. The car stopped within a few feet after striking her. When she was rescued by bystanders, she was under the front of the car about 3 or 4 feet north of the crossing used by pedestrians. She was carried to the office of a physician, "suffering with a concussion and contusion of the brain"; "had cuts and bruises all over her body; that is, on her arms and limbs"; "her right arm and elbow"; "lacerations on the right side of her head, about two or three inches in length"; and she was not "at herself completely." A physician attended her for two or three weeks, sometimes twice a day; "she developed a contusion of the brain"; "she had a hemorrhage into her brain, developed after the injury, which resulted in a loss of function or movement of her left leg"; "she was rather shocked in the brain and the concussion in the brain produced this loss of function and loss of motion." "Later she was carried to the infirmary and the X-ray revealed no fracture at all, but that the lick on her head produced this cerebral hemorrhage—a rupture of the blood vessel which produced

hæmatoma or clot on the brain.'' It was the conclusion of the physicians that she probably had a basal fracture, or a fracture at the base of the skull. From her injury to the time of the trial, her right leg became two and a half or three inches larger than the left, which was caused by ''an inflammatory condition of the muscles.'' The consentient opinion of the physicians was that her injuries were permanent.

She filed this action to recover of the Louisville Railway Company compensation for the mental and physical pain endured and the permanent bodily injuries sustained as the proximate result of its negligence in the operation of its street car which struck and knocked her down. Its defenses are a denial and contributory negligence. On the completion of the issues, and the evidence, under the instructions of the court, the jury returned a verdict in her favor of $6,000.

The railway company is here complaining of the insufficiency of the evidence showing a failure of any duty on the part of the motorman; of the instructions of the court; of the court's refusal to give offered instructions; and urgently insists she was guilty of such contributory negligence that she should not be permitted to recover.

Immediately before she was injured, she got off of a south-bound Walnut and Twenty-Eighth street car at Dumesnil, walked over to the sidewalk on the west side of Twenty-Eighth street and waited until the southbound car left the scene of the accident; then proceeded to attempt to cross from the west side of Twenty-Eighth, at or near the north side of Dumesnil, to the east side of Twenty-Eighth. While so doing, she was struck by the north-bound Walnut and Twenty-Eighth street car. As she left the curb, she looked both ways and observed no vehicular traffic moving; she started across the street, and, when near about the middle of it, again she looked and saw no traffic moving toward her; she continued across the street, and had gotten within 3 or 4 feet of the east curb line of Twenty-Eighth street when the car struck her. It came north on Twenty-Eighth street, and stopped at the usual place to let off and take on passengers. One or two passengers left, and two boarded, it. Twenty-Eighth street where it intersects with Dumesnil makes an offset according to the map presented of about 23.4 feet. There were buildings

on the four corners at this intersection. The offset in Twenty-Eighth street naturally prevents pedestrians crossing Twenty-Eighth street from seeing a great distance beyond the curve on Twenty-Eighth. This curve further interrupts the vision of the pedestrians according to where they may be while crossing Twenty-Eighth street, either north or south of Dumesnil.

According to the testimony of the chief witness of Breeden, the motorman in charge of the street car was engaged in receiving and changing 50 cents, for the purpose of taking out of it the witness' fare, from the time the street car was set in motion before it entered Dumesnil street as well as during the time it was crossing it, up to the moment the car struck her. The testimony of this witness was strongly and unequivocally contradicted by the motorman and one passenger. Both Dumesnil street and Twenty-Eighth street are 36 feet wide from curb to curb. The sidewalks thereon are 11 feet or more in width. The witnesses, except the motorman, seemingly agree that Breeden was crossing Twenty-Eighth street at the regular and usual point of travel set apart for pedestrians. The motorman claims that she entered Twenty-Eighth street "something like a car length" "north of Dumesnil."

It is apparent that, if she was this distance from the crossing used by pedestrians, the offset of South street on the south side of Dumesnil, on account of the building on that corner, completely prevented Breeden from seeing the street car, even if she looked for it, until it was approaching near the north side of Dumesnil. The witnesses of Breeden all claim that no signal or warning was given by the street car before or at the time of crossing Dumesnil or after it crossed it and before it struck Breeden, and one witness claims the motorman was engaged in making change and was giving no attention to the pedestrians in front, nor to the operation, of the car. The motorman claims that he was keeping a lookout, but did not see her before he crossed Dumesnil, or until he had practically crossed Dumesnil. At the time he first observed her, "the end of the car was plumb across Dumesnil, headed North on 28th and at that time she was starting off of the curb, was right by the curb and started in front of the street car and traveled West across 28th Street." The testimony of the motorman that he did not see her as above stated corroborates the testimony of the witnesses of Breeden

that, while the street car was crossing Dumesnil, the motorman was engaged in making change and giving no attention to the movements of the street car. It is not unfair to say that the motorman, without placing Breeden a car length from the crossing where the car struck her, would have no excusable or plausible explanation of his failure to see her on the crossing before the car struck her. The stopping of the street car and the removal from thereunder of Breeden by bystanders 3 or 4 feet north of the crossing used by pedestrians contradicts the testimony of the motorman, wherein he claims she was a car length from the crossing when she was knocked down by the street car. The motorman admitted that Breeden was 30 or 40 feet in front of the street car when he first saw her, and claims he immediately applied the brake and rang the gong; that the street car was traveling at the rate of about 5 or 6 miles an hour while crossing Dumesnil If it were traveling at 6 miles an hour, it covered 8 8/10 feet a second.

This resume of the evidence is sufficiently convincing to show that the evidence was conflicting, making an issue of fact to be determined by the jury, and therefore the court properly overruled the motion for a directed verdict.

Breeden was asked and answered thus:

"Q. After you got off of that street car, that car started up and went on around, didn't it? It was not there when the accident happened at all? A. No Sir. The one I got off?

"Q. Yes? A. Oh, no, it was gone.

"Q. After you got off of that street car, as you started to cross 28th Street, did you look to see whether any street car was coming from the opposite direction? A. I looked before I left the sidewalk, and when I got middleways of the street, I looked both ways again. I have always been careful, anyway.

"Q. You did look as you started to cross the street? A. Yes sir.

"Q. And you did not see this street car? A. No Sir.

"Q. Was there any traffic moving at all there? A. Not a thing—not a thing.

"Q. Now, then, you continued on across 28th Street? A. I guess it was 28th Street.

"Q. To the other side of that street? A. Yes Sir.

"Q. Then when you got into the middle of 28th Street, that is when you looked again? A. Yes Sir.

"Q. Looked both directions, did you? A. Looked both directions.

"Q. Did you see any street car then coming from the opposite direction? A. No, sir; I sure would not go on over and let it hit me, if I would have seen it.

"Q. You never did see the street car then until after the accident happened? A. I was struck. I did not know what struck me.

"Q. You did not know what struck you? A. No Sir."

The railway company contends that, though the evidence as a whole was sufficient to establish negligence on the part of the motorman, her quoted testimony abundantly establishes such contributory negligence as to entitle it to a peremptory instruction.

In support of its insistence for a peremptory instruction, it cites to us L. & N. R. Co. v. Sizemore's Adm'r, 221 Ky. 701, 299 S. W. 573, dealing with the duty of a pedestrian walking a railroad track to exercise ordinary care to avoid injury by those in charge of a train; Crouch v. Noland, 238 Ky. 575, 38 S. W. (2d) 471, involving the relations and duties of master and servant; I. C. R. R. Co. v. Bozarth's Adm'r, 212 Ky. 426, 279 S. W. 636, concerning the right to recover of the railroad company for a death occurring at a point over 300 feet from the depot and out of sight of it; and Louisville Ry. Co. v. Basler, 198 Ky. 500, 248 S. W. 1027. The last case concerns the right of an automobile driver who saw a street car approaching when he was about 60 feet from the point where he intended to cross the track, and thereafter paid no further attention to the approaching car and started across the track, when the car was only a short distance away, because he had underestimated its distance and speed when he first saw it. We held he was contributorily negligent as a matter of law. The facts in the cited cases are not comparable to those in the present one. Indeed, only one of them deals with the duties of a pedestrian and the owner and operator of a street car. It recognizes the rule to be

that a pedestrian when crossing street car tracks is only required to exercise that degree of care that an ordinarily prudent person would exercise under like or similar circumstances. Louisville Ry. Co. v. Kennedy, 162 Ky. 560, 172 S. W. 970, Ann. Cas. 1916E, 996. While the duty was upon Breeden, under this general rule, to exercise ordinary care for her own safety, yet she was entitled, in the exercise of such care, to walk as fast or as slowly as she desired, and to use any part of the street necessary for the purpose of travel. Louisville Ry. Co. v. Boutellier, 110 S. W. 357, 33 Ky. Law Rep. 484. And in doing so she was not required to rely on her eyes alone, but was entitled to rely on the motorman performing his duties, which were to keep a lookout in front of the car, to give timely warning before starting it, and to give reasonable and timely warning of its approach at the street intersection. Louisville Ry. Co. v. Vessells' Adm'x, 159 Ky. 664, 167 S. W. 924; K. T. & T. Co. v. Jenkins, 171 Ky. 539, 188 S. W. 645; Brown v. Savannah Electric & Power Co., 46 Ga. App. 393, 167 S. E. 773. The law recognizes the thoughtlessness of human beings, and exacts of the motorman of a street car the duty to exercise ordinary care in the operation thereof, for their protection as pedestrians when crossing the street car tracks, and accords to them, when so doing, the right to rely, not only on their own eyesight, but upon the performance on the part of the motorman of his duty, as herein outlined.

It is true that she was bound to see what was obvious to be seen. Equally so was the motorman bound to see what was obvious to be seen. Clancey v. Cumberland County Power & Light Co., 128 Me. 274, 147 A. 157. Having looked before she started, she was not required to look at every step, and she was entitled to rely on the motorman discharging his duty. Community Traction Co. v. Reno, 30 Ohio App. 143, 164 N. E. 429. This conforms with the rule that she was only required to exercise the care that an ordinarily prudent person usually exercises under like or similar circumstances. Peycke v. United Electric Rys. Co., 49 R. I. 257, 142 A. 232. When she arrived at the crossing and looked for a car and observed none in sight, and therefore started and reached some point in the street, again looked and saw no car, she had a right to assume, if one came, it would stop at the regular stopping place, and that it would not start without a warning or until she had

passed and crossed over the street. See cases, supra. Murphy v. Philadelphia Rapid Transit Co., 285 Pa. 399, 132 A. 194.

The street car was rightfully in the street and had the right of way with the duty upon the motorman to run the car thereon with due regard for the safety of pedestrians, and Breeden had the same right to use the streets as the railway company; the only distinction being that, as the car runs on a fixed track where it and her rights conflicted, it was her duty to give the right of way while passing along its tracks exercising ordinary care for her own safety. Cinc., Newport & Cov. Ry. Co. v. England, 253 Ky. 86, 68 S. W. (2d) 783; Mullins v. Cinc., Newport & Cov. Ry. Co., 253 Ky. 156, 68 S. W. (2d) 790.

With these principles in mind, and giving due weight to the testimony of the witnesses, we are not prepared to say that on the whole of the evidence Breeden was, as a matter of law, guilty of contributory negligence.

The street railway company introduced an ordinance of the city, one clause of which reads:

"Pedestrians shall cross any roadway by the most direct route to the opposite curb, either at cross-walks or at any other place where such crossing outside of cross-walks is not prohibited, and when crossing at any place other than a cross-walk shall yield the right-of-way to all vehicles upon the roadway."

The city ordinance giving it the right of way at the intersection did not relieve the motorman of the imperative duty, in the operation of its car, to exercise ordinary care to avoid injuring her. Gimbert v. Norfolk So. R. Co., 152 Va. 684, 148 S. E. 680, 681. Nor was Breeden necessarily negligent even though she violated the ordinance and was injured because she was violating it. Its mere violation did not constitute negligence on her part, her right to recover is not affected by the ordinance unless she was negligent in its breach, and her negligence directly contributed to bringing on or causing her injury. Sturm v. Tri-City Ry. Co., 190 Iowa, 387, 178 N. W. 525; Heiden v. Minneapolis St. Ry. Co., 154 Minn. 102, 191 N. W. 254.

An instruction was offered by the street railway company, predicated on the city ordinance, directing the

jury that it was Breeden's duty to yield the right of way to the street car and not to attempt to cross in front of it, and, if she so failed to observe this duty, and that such failure on her part contributed to her injury, to find for it. Another requested the court to inform the jury that, if she was at a place other than the regular walkway, the motorman had a right to presume that she would not attempt to cross the track in front of the car, and he had a right to continue operating it, and was not required to stop, check its speed, etc. The given instructions adequately cover the theories embraced by the above-offered instructions, and therefore the court properly refused them. The third offered instruction asked that the jury be directed that, if it believed from the evidence that she came upon the track when the car was so close to her, had the motorman been operating it at a reasonable rate of speed, he by the exercise of ordinary care and the use of the means at his command could not have stopped the car in time to have prevented it striking her, to find for the defendant. A fourth instruction asked the court to instruct the jury to impose upon her the duty to keep a lookout for traffic and to exercise ordinary care for her own safety, and, if she failed in either, to find for it. The law of the case as it is attempted to be embraced in the last two instructions was aptly stated in the given instructions. The court gave an instruction which reads:

"If the jury believe from the evidence that the plaintiff crossed 28th Street at the time referred to in the evidence at the regularly designated crosswalk for pedestrians, it was her duty to exercise ordinary care generally for her own safety, or if you believe from the evidence that she crossed said 28th Street at a place other than the regularly designated cross-walk for pedestrians, it was her duty to exercise for her own safety such increased care commensurate with the increased danger involved, if any, in crossing said street at said place; and if you believe from the evidence that she was negligent, in that she failed to exercise such degree of care for her own safety, and by reason of such negligence, if any there was upon her part, she so helped to cause or bring about the accident and injuries of which she complains, when but for such negligence, if any there was upon her part, said accident and injuries would not have occurred, then

the law is for the defendant, Louisville Railway Company, and you will so find, even though you should further believe from the evidence that the motorman in charge of said street car was also negligent, in that he failed to perform some one or more of the duties required of him by the first instruction."

This instruction is criticized because it fails to include after the word "danger" this phrase, "as a person of ordinary care and prudence would ordinarily exercise under like circumstances." The street railway company cites Ross v. Louisville Taxicab & Transfer Co., 202 Ky. 828, 261 S. W. 590, and Cundiff v. Nave, 240 Ky. 47, 39 S. W. (2d) 471, in support of its criticism thereof.

In Ross v. Louisville Taxicab Co. we directed the fifth instruction given therein to be extended by adding thereto language defining the duty of Ross when crossing the street between intersections, and in doing so we directed it to be so written as to include the words "as a person of ordinary care and prudence would ordinarliy exercise under like circumstances." In Cundiff v. Nave the given instruction contained the phrase directed to be embraced in the instruction in Ross v. Louisville Taxicab & Transfer Co. In the pending case, the last part of instruction No. 2 contains language equivalent to the clause directed to be given in the Ross Case, and which was given in the Cundiff-Nave Case. The court defined the words "ordinary care" and "negligence." With these defined terms, when all of the instructions given by the court are read together, the criticism of instruction No. 2 is not well taken. Because we directed the given instruction in the Ross Case to include the suggested amendment and approved the one given in the Cundiff Case, containing the same phrase, it should not be understood that the failure to include the identical language of those instructions in a future case would constitute a reversible error, where equivalent words are used.

The instructions as a whole fulfill the requirement of those in the Ross and the Cundiff Cases, and therefore they are not susceptible of the criticism now urged.

Perceiving no error prejudicial to the rights of the street railway company, the judgment is affirmed.