Southern Ry. Co. in Ky. v. Winchester's Ex'x.

CASE 17.—ACTION BY CLARK A. WINCHESTER'S EXECU-
TRIX AGAINST THE SOUTHERN RAILWAY IN
KENTUCKY FOR THE NEGLIGENT DEATH OF
PLAINTIFF'S INTESTATE.—November 15.

# Southern Ry. Co. in Ky. v. Winchester's Ex'x.

Appeal from Jefferson Circuit Court; Common
Pleas Branch; First Division.

EMMETT FIELD, Judge.

Judgment for plaintiff, defendant appeals—
Reversed.

1. Railroads—Accident at Street Crossing—Sufficiency of Warn-
ing—Question for Jury.—In an action against a railway com-
pany for the death of a pedestrian at a street crossing, held,
under the evidence, a question for the jury whether adequate
notice of the approach of the train was given.

2. Same—Evidence—Admissibility.—In an action against a rail-
way company for the death of a pedestrian at a street cross-
ing, alleged to have resulted from a negligent failure to give
warning of the approach of a train, it may not be shown that
warning was not given on previous occasions.

3. Same—Duty at Crossings.—A railway company is liable for
injuries resulting from its failure to have its train under
reasonable control in approaching a street crossing, to keep
reasonable lookout for persons using the crossing, to give
timely notice of the train's approach by ringing the engine's
bell, to have the headlight burning, or to exercise ordinary
care to prevent injury to persons using the crossing.

4. Same.—Where a street crossing over railroad tracks is used
by many persons, and is more than ordinarily dangerous to
such persons, the company, in addition to the usual signals,
must provide such signals as are reasonably necessary to
give notice of a train's approach to the crossing.

5. Same—Instructions—Care Required of Pedestrian.—In an
action against a railway company for the death of a pedes-

Southern Ry. Co. in Ky. v. Winchester's Ex'x.

trian at a street crossing, an instruction that he, in approaching the crossing, he failed to exercise ordinary care for his own safety, and such failure contributed to his injury, and he would not have been injured except for his own negligence, plaintiff could not recover, was erroneous for not defining the pedestrian's duty.

6.  Same—Pedestrian's Duty.—It is the duty of a pedestrian in approaching a railroad crossing to use such care as may be usually expected of an ordinarily prudent person to learn of the approach of trains and keep out of their way, and, if the crossing is especially dangerous, he must exercise increased care commensurate with the danger; and if his failure to do so causes him injury he can not recover, though the company is negligent in not keeping its train under reasonable control in approaching the crossing, in not keeping a reasonable lookout and in giving inadequate warning.

Judge Nunn dissenting.

HUMPHREY & HUMPHREY and L. R. YEAMAN, attorney for appellant.

### POINTS AND AUTHORITIES.

1. Even if there was a scintilla of evidence requiring a submission of the case to the jury, the lower court should have set aside the verdict because flagrantly against the weight of the evidence. (Hurt v. L. & N. R. R. Co., 116 Ky., 550.)

2. Evidence that the crossing bell did not ring on occasions prior to the accident was inadmissible.

(a) There was no allegation that this bell or any of appellant's appliances were defective, and in the absence of such an allegation this evidence was not admissible to show appellant's knowledge of the defective condition of its appliances. (Ency. of Pl. & Prac., vol. 4, p. 742; Cincinnati, etc., Ry. Co. v. Barker, 14 Ky. Law Rep., 143; McCain v. L. & N. R. R. Co., 13 Ky. Law Rep., 334; L. & N. R. R. Co. v. McGary's Admr., 104 Ky., 511; L. & N. R. R. Co. v. Clark's Admr., 105 Ky., 571, 582; Sandy River Cannel Coal Co. v. Caudill, 22 Ky. Law Rep., 1177; South Covington & Cincinnati Ry. Co. v. Stroh, 23 Ky. Law Rep., 1807; Chun v. K. & I. B. Co., 23 Ky. Law Rep., 1092; Thomas v. L. & N. R. R. Co., 18 Ky. Law Rep., 164; C. & A. R. R. Co. v. C. G. Pearson, 71 Ill. App., 622.)

(b) It is not permissible to prove negligence on a particular occasion by evidence of negligence on prior occasions. (L. &

col. 127—10

Southern Ry. Co. in Ky. v. Winchester's Ex'x.

N. R. R. Co. v. Berry, 88 Ky., 222, 225; Eskridge's Exrs. v. C., N. O. & T. P. Ry. Co., 89 Ky., 367, 371, 372; L. & N. R. R. Co. v. Webb., 99 Ky., 332, 346; Hutcherson v. L. & N. R. R. Co., 21 Ky. Law Rep., 733, 735; C. & O. Ry. Co. v. Riddle's Admx., 72 S. W., 22, 23; I. C. R. R. Co. v. Watson's Admr., 117 Ky., 374; I. C. R. R. Co. v. Borders, 61 Ill. App., 55; L. & N. R. R. Co. v. Wallace's Admr., 6 Ky. Law Rep., 302.)

3. The verdict was excessive. (Ky. Stats., section 6; C. & O. Ry. Co. v. Lang's Admr., 19 Ky. Law Rep., 67; L. & N. R. R. Co. v. Kelly's Admr., 19 Ky. Law Rep., 74.)

CHAS. H. SHIELD and O'NEAL & O'NEAL for appellee.

The mere statement of the undisputed facts in this case is a demonstration that the appellant was guilty of the grossest negligence in that at a dangerous crossing, made dangerous by the curve in their tracks, by the fact that no employee of the crew operating the train could obtain a view of the crossing, by reason of the fact that no lookout was maintained by the company, and in the admitted fact that they had no gate at this crossing, they had no watchman there, and had provided and maintained no adequate signal to protect the public who had a right to use the street, from injury and death occasioned by the operation of the road in such a manner; if we had nothing else in this case except the statements of the defendant's witnesses, under the decisions of this honorable court the railroad company appellant has not maintained a proper system of signals to protect the public, and that fact in itself constitutes negligence sufficient to justify recovery.

### AUTHORITIES CITED.

L. & N. R. R. Co. v. Crowley, 21 Ky. Law Rep., 1434; L., N. A. & C. R. R. Co. v. Sheck, 14 Ky., 833; Ky. Cent. R. R. Co. v. Smith, 93 Ky., 449; L. & N. R. R. Co. v. Morris, 14 Ky. Law Rep., 466; L., C. & L. R. R. Co. v. Goetz, 79 Ky. 442, 25 L. R. A. 287; Paducah & M. R. R. R. Co. v. Hoehl, 75 Ky., 41; C. & O. Ry. Co. v. Dixon, 104 Ky., 608; Cahill v. Cin. South. Ry. Co., 13 Ky. Law Rep., 714; Seetz v. L. & N. R. R. Co., 25 Ky. Law Rep., 1548; L. & N. R. R. v. Millett, 20 Ky. Law Rep., 532; Southern Ry. Co. v. Evans, 23 Ky. Law Rep., 568; Alexander v. Bradley, 66 Ky., 667.

OPINION OF THE COURT BY JUDGE HOBSON—Reversing.

On November 29, 1905, about 5:40 a. m., Clark A. Winchester was struck by an out-going train of the Southern Railway Company in Kentucky on the Hemlock Street crossing in Louisville, Ky., and instantly killed. This action was brought by his executrix to recover for his death, and, judgment having been entered in favor of the plaintiff against the railway company, it appeals.

It is charged in the petition that the Hemlock Street crossing was unusually dangerous; that it was much used; that the train that struck Winchester was running at a too rapid rate of speed; that there was no warning or notice of its approach to the crossing; that those in charge of the train did not have it under proper control and were not keeping a lookout; that there was no flagman, watchman, or gate at the crossing, as there should have been, as the crossing was in a thickly settled part of the city and was much used. By its answer the defendant controverted the allegations of the petition and pleaded affirmatively that the decedent lost his life by reason of his contributory negligence. This was controverted by the reply, which made up the issue.

The proof on the trial showed that the railroad crossing at Hemlock street was on a sharp curve, and that the right of way at this point was very narrow. One witness says it was only about 20 feet wide. Winchester was approaching the crossing from the south, and as he came along the sidewalk a high fence shut off all the view until he got within a few feet of the track. When he came from behind

the fence and got upon the right of way, by reason of the sharpness of the curve he could not be seen by either of the men on the engine. The engineer testified that his view was cut off by the boiler, and the front brakeman, who was watching on the other side of the cab, did not see Winchester until after he was struck by the train, in consequence of the curve. One witness who was getting a bucket of water on the corner lot, only a few feet from the crossing, testified that as the train passed her no bell was ringing, and the plaintiff introduced other witnesses tending to confirm the testimony of this witness. By an ordinance of the city of Louisville the whistle is not allowed to be blown in the city limits, except in cases of emergency.

The proof for the defendant showed that it had on the engine a bell which rang automatically; that this bell was started when they left the yards, and was ringing when they approached the crossing. The train was a heavily laden freight running eight or ten miles an hour upgrade, and the exhaust made considerable noise. There was no gate or watchman at the crossing. There was a gate at the Catalpa street crossing, one square away, and also a gate at the Woodland avenue crossing one square away in the opposite direction. At the Hemlock street crossing there was a bell at the top of a pole. The bell was about the size of an engine bell, and had an arm to it from which a wire ran to the Catalpa street crossing and another to the Woodland avenue crossing. When a train was approaching the watchman in the tower at Catalpa street would ring the bell by pulling the wire if the train was coming from that direction; and if it was coming from the other direction the watchman at Woodland avenue pulled the

wire and rang the bell. The defendant showed by these watchmen that the bell was ringing at the time the train in question approached. The defendant also proved by a witness who was coming along Hemlock street, approaching the crossing, some distance behind Winchester, that he heard the train coming and also heard a bell ringing.

It is insisted for the defendant that on this proof the court should have instructed the jury peremptorily to find for the defendant, and that under all the evidence no judgment against it should be permitted to stand. We cannot concur in this view. If the plaintiff's proof was true, neither of the bells was ringing; and, while the weight of the evidence would perhaps show that the engine bell was ringing, it would by no means follow from this that adequate notice of the approach of the train was given. It is well known that light and sound travel in straight lines. From the sharpness of the curve, the light from the headlight of the engine would not be thrown upon the crossing until the engine was practically at it; and the headlight would therefore not give the traveler who was near the crossing warning of the approach of the train. As sound also travels in a straight line, this might reach a man who was back from the crossing some distance where it would not reach a person who was near the crossing, as Winchester was, and he would have no notice of the approach of the train, unless he might see it, and this he could not do until he was practically on the track. Under the evidence of the defendant this train was running over the crossing without any lookout; for neither of the men in the cab who were looking out saw Winchester, or could see a man after he would come in view at the crossing. This was in a thickly

settled part of the city. There was much traveling over the crossing, and, in view of the proof, it was a question for the jury, whether adequate notice of the approach of the train was given. Persons approaching the crossing would naturally look to the bell on the pole, and, if this bell was not ringing, presume that the crossing was safe; for the bell was put there to notify the public of the approach of the train, and, if it was not rung when this train approached, it was misleading. In thickly settled communities the railroad company must give adequate notice of the approach of its trains, and must keep a reasonable lookout; and where, as here, the ordinary means of giving notice and the ordinary lookout would be insufficient, other precautions must be provided.

The plaintiff introduced W. A. Thomas, and he was allowed to state as follows, over the defendant's objection: "Q. Prior to the accident I will ask you if it would always ring when the wires were pulled. By the Court: Do you remember this occasion? A. I was not present at the time this happened. Q. State how the bell would act there before the accident. A. I have frequently noticed that bell to shake, and not to ring." It also introduced Earnest Guthrie, and he was allowed to state as follows, over the defendant's objections: "Q. I will ask you to state if you had noticed that bell before Mr. Winchester was killed, when trains were approaching and when the tower man was trying to operate it, whether it would ring. (Objected to by counsel. Objection overruled, to which defendant by counsel excepted.) Q. Tell the jury what you have noticed about that. A. Sometimes it would ring and sometimes it would not. Sometimes you would see the post vibrate, and the

bell would attempt to ring, but could not do it on account of various causes. Sometimes the wind would twist the wires, and that would cause them to work with friction, and the friction was so great that the bell would not ring, and other times the wire would be broken and the wire would not work. The tapper would be held on one side, and the pole would shake, but there would be no sound. Q. Before the accident did that occur often or seldom? A. It occurred frequently?" Matthew L. Blair and George W. Grant, who were also introduced by the plaintiff, were allowed to give similar testimony over the defendant's objection. The objection to this testimony should have been sustained. The question was whether adequate notice of the approach of the train in question was given. If proper notice of the approach of the train was given, it was immaterial that proper notice was not given of the approach of some previous train. The fact that the bell would sometimes ring on previous occasions, and sometimes would not ring, when the watchman pulled the wire, is no evidence that it did not ring at the time in question. If the watchman on other occasions was negligent, this fact cannot be proved to show that he was negligent on this occasion. The question the jury are to try is simply whether proper notice of the approach of this train was given; and, if the bell was in fact ringing as this train approached, the defendant discharged its duty in that regard. The proof that the bell frequently did not ring did not tend to show that it did not ring on this occasion; for it is evident from the proof that the bell frequently did ring, and so the evidence, as far as the ringing of the bell goes, would tend as much to show that the bell was ringing at the time in question as that it was not ringing. The

only effect of the evidence was to get into the case proof that on other occasions the defendant had been guilty of negligence in not giving proper notice of the approach of its trains. It is well settled that this cannot be done.

The court at the conclusion of the testimony gave the jury these instructions: "(1) The court instructs the jury that it was the duty of the defendant's employes in charge of the train which struck Clark A. Winchester at the time and place mentioned in the petition to have the engine under reasonable control when it approached the crossing at Hemlock street, to keep a lookout ahead for the persons who were using the crossing, to give timely notice of the approach of the train by ringing the bell of the engine, to have the headlight burning, and to exercise ordinary care to prevent injury to persons using the crossing; and if the jury shall believe from the evidence that the said employes failed to perform any of these duties, and that by reason thereof the said Clark Winchester was struck by the engine and killed, then the law is for the plaintiff, and they should so find, unless they shall further believe from the evidence that the said Winchester was negligent, and thereby helped to cause or bring about his injuries, and that he would not have been injured but for his contributory negligence, if any there was. (2) The court instructs the jury that if they shall believe from the evidence that the crossing at Hemlock street was used by many persons, and that it was more than ordinarily dangerous to persons using it, then it was the duty of the defendant, running its trains over the said crossing, in addition to the usual and ordinary signals, to provide such signals as were reasonably necessary to give notice of the train's approach

to the crossing; and if it failed to provide such signals as were reasonably necessary at that crossing, and by reason of such failure the said Winchester received the injuries complained of, and he did not help to cause or bring about his injuries by negligence on his part, but for which he would not have been injured, then the law is for the plaintiff, and they should so find.   (3) It was the duty of the said Winchester, when he approached the said crossing, to exercise ordinary care for his own safety; and if he failed to exercise that degree of care for his own protection, and by reason of such failure he helped to cause or bring about his injuries, and he would not have been injured but for his contributory negligence in that respect, if any there was, then the law is for the defendant, and so the jury should find, even though they may believe from the evidence that the defendant or its employes failed to discharge the duties incumbent upon them."

We see no objection to instructions 1 and 2; but the third instruction is defective, in that it does not define the duties of the decedent in using the crossing.   In L. & N. R. R. v. Cummins' Administrator, 111 Ky. 338, 23 Ky. Law Rep. 681, 63 S. W. 595, we thus laid down the rule: "In using the railroad and the street crossing, both parties were required to exercise the same degree of care.   It was incumbent on appellant to give such notice of the approach of the train to the crossing, to run the train at such speed, keep such lookout, and use such care to avoid injury to persons thereon as might usually be expected of ordinarily prudent persons operating a railroad under like circumstances.   It was incumbent on the intestate to use such care as might usually be expected of an ordinarily prudent person, situated

as he was, to learn of the approach of the train and keep out of its way. If the crossing was especially dangerous, it was incumbent on both parties to exercise increased care commensurate with the danger. In lieu of the third instruction on another trial, the court will tell the jury that it was the duty of the intestate, on approaching the crossing, to use such care as may be usually expected of an ordinarily prudent person to learn of the approach of the train and keep out of its way; that, if the crossing was especially dangerous, it was incumbent on him to exercise increased care commensurate with the danger; and that if he failed to exercise such care, and but for this would not have been injured, then the law is for the defendant, and the jury should so find, even though they may believe from the evidence that the defendant or its employes were negligent as set out in No. 1 and No. 2.

The other matters complained of will perhaps not occur on another trial.

Judgment reversed, and cause remanded for further proceedings consistent herewith.

Judge Nunn dissents on the question of the incompetency of the evidence referred to.