## Smith's Admr. v. C., N. O. & T. P. Ry. Co., et al.

(Decided February 2, 1912.)

### Appeal from Boyle Circuit Court.

1. Railroads—Negligence—Persons Using Track.—A railroad company in running its train through an incorporated town of 900 inhabitants at a time and place where the presence of persons on its tracks may be reasonably anticipated, at the rate of from forty to forty-five miles an hour, is guilty of negligence.

2. Same—Deaf Person—Crossing track Where Passing of Trains May Be Reasonably Anticipated—Contributory Negligence.—It is the duty of a person crossing a railroad track at a place where the passing of trains may be reasonably anticipated, to use ordinary care to learn of the approach of a train and keep out of its way; and if such person be totally deaf, ordinary care requires him to use his eyes, the only means by which he can ascertain the approach of the train. If he fail to do so, and is thereby injured, he is guilty of contributory negligence that will preclude a recovery, even though the railroad may have been guilty of negligence in running its train at too high a rate of speed.

3. Same—Evidence—Peremptory Instruction.—In an action for damages for the death of a person killed while crossing a railroad track, evidence examined, and held that the trial court properly directed a verdict in favor of the defendants.

ROBERT HARDING, B. F. PROCTOR for appellant.

CHARLES H. RODES, GEO. E. STONE and JOHN GALVIN for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY—COMMISSIONER—Affirming.

Asbury Smith was struck and killed on December 21, 1907, by a train operated by the Cincinnati, New Orleans & Texas Pacific Railway Company. Charging that his death was due to the negligence of the railway company and its conductor, Thomas Quinlan, and its engineer, John Knosk, his administrator brought this action to recover damages. Upon motion of the defendants at the conclusion of all the evidence, the court

peremptorily instructed the jury to find for them. Judgment was entered accordingly, and the administrator appeals.

The intestate was twenty-six years of age, and a deaf mute. He was a student at the Kentucky School for the Deaf at Danville. On the day of the accident, he boarded appellee's midday train at Danville for the purpose of going to Junction City and there taking passage via the Louisville & Nashville Railroad for his home in Bowling Green, Ky. Junction City is a town of about nine hundred inhabitants, and being the junction of the Cincinnati, New Orleans & Texas Pacific Railway and the Louisville & Nashville Railroad, a large number of trains pass there daily. These two roads cross each other at right angles, the former running north and south, and the latter running east and west. Both roads use the same depot which is situated in the northeast angle of the two roads. In the northwest angle is the signal tower, a two-story building about fifteen feet and three inches wide. From the east side of the tower to the west rail of the C., N. O. & T. P. track the distance is fifteen feet. In the southeast angle of the tracks is the Tribble House, a hotel, and in the southwest angle is the McCullom House, another hotel. The west side of the McCullom House is several feet west of the tower. There is a well defined pathway leading from the McCullom House along the side of the Louisville & Nashville track and across the C., N. O. & T. P. track to the depot, which is situated in the northeast angle of the two roads. In proceeding from the McCullom House along the pathway, there is nothing to obstruct the view of a train approaching from the north on the C., N. O. & T. P. Railway, until the tower is reached. Then the view is obstructed for the space of fifteen feet and three inches. When the tower is passed, the view of the track is unobstructed, and an approaching train may be seen for a distance of several hundred feet.

The intestate reached Junction City shortly after eleven o'clock, A. M. He got off the train at the depot, and proceeded to the McCullom House to get something to eat. After procuring a ham sandwich he came out of the hotel, walked north across the L. & N. track for a distance of thirty feet. He then turned to the east, and taking the footpath, proceeded in the direction of

the C., N. O. & T. P. track. While crossing this track, he was struck by fast, south bound passenger train No. 1. All the witnesses testify that the whistle 'of the engine on this train was blown for the station. It was also blown for the board. The train was not required to stop at the crossing, as the crossing was equipped with a derailing switch. The whistle also blew for the Shelby street crossing, and when the intestate was about to step or leap on the track in front of 'the approaching train, the danger or distress signal was sounded. The train had whistled for the station while the intestate was in' the hotel. The other signals were given after he came out. As he proceeded north, the train was in view. As he proceeded east, it was also in view except for the time he 'was behind the tower. As the train approached, the bell was being rung, and the engineer was at his post of duty. The footpath between the hotel and the depot 'was traveled daily by a large number of persons, including passengers. Junction City is an incorporated town. There was sufficient evidence to show that the place was one where the presence of persons 'crossing the track might have been reasonably anticipated. The train was running at about forty or forty-five miles an hour. It was a through train, and did not stop at the station. When the intestate approached the track at high angles, he was looking east and did not turn his eyes toward the approaching train, which was within a few feet of him. Two or three persons attempted to attract his attention to the approaching train by making motions and calling to him. One person present attempted' to catch him just as he went upon the track. According to some of the witnesses, he stepped upon the track and was struck by the train just before he got across. According to other witnesses, he leaped into the middle of the track, and was just in the act of making a second leap when he was struck. When he attempted to cross, the train was right on him.

As the engineer had the right to assume that the intestate would heed the warning of the approaching train and keep out of its way, it was not incumbent on him to stop the train until it became reasonably apparent that the intestate was oblivious of the danger. This did not appear until after the intestate emerged from behind the tower, and attempted to cross the track. It is, therefore, manifest that intestate's peril could not

have been sooner discovered, and that no power on earth could have stopped the train, after his peril was discovered, in time to avoid the injury. That being true, and the evidence further showing that a lookout was kept, and that reasonable warning of the approach of the train was given, it follows that the only negligence with which appellee may be justly charged is the excessive speed of the train; and it is for this negligence counsel for appellant insist the case should have been submitted to the jury. This court is committed to the doctrine that it is the duty of a railroad company in incorporated towns where the public habitually uses its tracks and right of way as a footway, and the presence of persons on such tracks may therefore be reasonably anticipated, to operate its trains with the presence of such persons in mind; that is, to keep a lookout, to give timely warning of the approach of trains, and to have them under reasonable control. (I. C. R. R. Co. v. Murphy's Admr., 123 Ky. 787; L & N. R. R. Co. v. McNary's Admr., 128 Ky. 420.) We therefore conclude that appellee was negligent in running its trains at a speed of from forty to forty-five miles an hour.

But this conclusion is not decisive of the case, for the rule is that where the railroad company is guilty of negligence in running its train too fast, and the party injured or killed is himself negligent in going upon the track in front of the approaching train, the injury is the result of the concurrent negligence of both parties, and there can be no recovery for the negligence of the railroad company, because but for the negligence of the party injured, he would not have been injured (Hummer's Extx. v. Louisville & Nashville R. R. Co., 128 Ky. 492.) The same rule is laid down in Southern Railway in Ky. v. Winchester's Extx., 127 Ky. 144. The question then is, was the intestate guilty of contributory negligence? The accident happened at a time and place not only where the presence of persons on the railroad track might have been reasonably anticipated, but the passing of the trains might have been reasonably anticipated. Therefore, the same rule applies as in the case of a street crossing where the railroad and traveler are under reciprocal duties, requiring the railroad on the one hand to keep a lookout, to give reasonable warning of the approach of the train, and to have

the train under reasonable control; and requiring the traveler on the other hand, who is about to cross the track, to use ordinary care to learn of the approach of the train and keep out of its way. (Southern Railway in Kentucky v. Winchester's Extx., supra). Now what is ordinary care, under such circumstances, on the part of a person totally deaf? How may he learn of the approach of a train? Three of his senses are not available at all for such a purpose. His fourth sense, that of hearing is entirely gone. Therefore, he must use his eyes— he must look. In other words, the duty of using ordinary care to learn of the approach of a train, imposes upon the traveler the duty of using the only means by which he can discover its approach. Nor is there anything in this rule that conflicts with the attitude of this court towards the ''Stop!! Look! and Listen! '' doctrine. That doctrine has never been followed in this State, because it extracts too high a degree of care on the part of the traveler. Under that rule, the traveler must do three things. He must stop. He must look. He must listen. There are times, however, when the requirements of ordinary care may be satisfied with less. Thus in approaching a railroad track, where there is a clear, unobstructed view of the track for several hundred feet in each direction, a jury may well conclude that looking in each direction is all that is necessary. In other cases they may conclude that ordinary care required the passenger to stop and look, or to stop and listen, or to look and listen, or to stop, look and listen, depending on the peculiar circumstances of the case. While for this reason, therefore, we have refused to adopt the ''Stop, Look and Listen'' rule we have never held that a traveler who made no effort of any kind to discover the approach of a train, exercised ordinary care for his own safety.

All witnesses agree that the intestate never raised his eyes or looked in the direction from which the train was coming. Had he done so, he would have seen the approaching train. That being true, and having failed to use his eyes, when they alone could have made him aware that the train was approaching, he was necessarily guilty of contributory negligence, for notwithstanding the negligence of appellee in running its trains too fast, he would not have been injured had he not gone upon the track immediately in front of the train with-

out making the slightest effort to discover its approach. We, therefore, conclude that the trial court properly directed a verdict in favor of the defendants.

Judgment affirmed.