# Louisville & Nashville Railroad Company v. Sizemore's Administrator.

(Decided November 4, 1927.)

## Appeal from Bell Circuit Court.

1. Railroads.—Man walking railroad track is required to exercise at least as much care to avoid injury as is required of those in charge of trains.
2. Railroads.—Where one walking on railroad track without looking and with his head down against approaching train is struck by train, he is, as a matter of law, guilty of such contributory negligence that no recovery can be had for death or resulting injuries.

WOODWARD, WARFIELD & HOBSON, ASHBY M. WARREN and LOW & BRYANT for appellant.

JAMES M. GILBERT for appellee.

. Opinion of the Court by Drury, Commissioner—
Reversing.

The Louisville & Nashville Railroad Company seeks
by this appeal to reverse a judgment for $2,500 recovered
against it by the administrator of G. W. Sizemore for
the death of his intestate. Sizemore was killed by a
Louisville & Nashville passenger train near Mathel, in
Bell county, Ky., on November 22, 1924. The section of
the Louisville & Nashville Railroad upon which Sizemore
was killed is a road leading from Pineville to Harlan.
The country through which this road is constructed is
mountainous, and as a result there are many curves in
the road, so that it is difficult to read the record and study
the maps without getting the points of the compass con-
fused, and to avoid that confusion we shall adopt the
practice of the Louisville & N. R. Co. and speak of trains
going from Harlan to Pineville as northbound trains,
and trains proceeding in the other direction as south-
bound trains. This section of the railroad upon which
Sizemore was killed is a double-tracked railroad. At the
point where he was killed, and for a considerable distance
each way therefrom the road is built alongside the Cum-
berland river. At the time he was killed, Sizemore was
walking from the direction of Pineville and in the direc-
tion of Harlan. As compared with the course of the
Cumberland river, he was going upstream; as compared
with the practice adopted by the Louisville & N. R. Co.
in referring to these tracks, he was going south. He was
walking on what was to him the left-hand track—what
the railroad company would call the east track. It was
the track nearest the Cumberland river; while upon the
far track from the Cumberland river, the one that the
railroad company would call the west track, and which
was to Sizemore's right, there was a south-bound freight
train going from Pineville to Harlan in the same direc-
tion that Sizemore was going. This track occupied by
the freight train was between Sizemore and the moun-
tain. Upon the same track upon which Sizemore was
walking a Louisville & Nashville passenger train running
about 30 miles per hour was coming north, as the rail-
road people say, going from Harlan to Pineville, and as
Sizemore walked along, he faced this coming passenger
train, and they were rapidly approaching each other.
The freight train on the west track next to the mountain
was made up of empty coal gons. It made considerable

noise, and the proximity of the mountain certainly added to that noise.  To Sizemore's left, and but a short distance from him, was the Cumberland river, which at that place passes over a series of shoals and the water flowing over these shoals made considerable noise, so that the noise of the river and that of the passing freight train probably prevented Sizemore from nearing the approach of the passenger train.  There was a curve in the track at the point where Sizemore was killed.  To Sizemore this was a curve to the right.  To the ones on the approaching passenger train, it was a curve to the left. The engineer seated on the right-hand side of the cab therefore had his view of the track shut off by the boiler in front of him.  The fireman, whose view was unobstructed by the boiler, had his view obstructed by the freight train on the west track.  The fireman says he never did see Sizemore.  The engineer says he did not see him until his body was thrown to the right when the train struck him.  Thus they never discovered his peril at all.  The first notice either of them had of his presence on the track was after his peril had culminated in the injury from which he died almost instantly.  The only evidence that the train operatives could have discovered Sizemore's peril is that of one witness who says the fireman could have seen Sizemore 30 feet before he was struck.  The train would have gone that distance in less than one-fifteenth of a second, and nothing could have been done by them in that space of time.  But two witnesses saw him killed.  One was Mr. I. N. Davenport, who said:

"I didn't think Sizemore saw the train at all. The reason I think that was because I noticed him coming up the track in a deep study with his head dropped down, and he did not raise his head as I saw."

He further said:

"Sizemore could have seen the train if he had looked up."

The other witness to the killing was a Mrs. Wilson, and she testified that Sizemore was walking with his head down.  Many questions are presented by this appeal, all of which we reserve, and we are only passing on one.  The question on which we pass is the right of the railroad company to have a peremptory instruction

because of the established and undisputed contributory negligence of Sizemore. He was not killed at a crossing of any kind, and was killed at a time when he was using the track of the railway as a footpath.

Conceding, but not deciding, that this track was used by a sufficient number of people to require the railroad company to anticipate the presence of pedestrians upon it, still, in using it as he did, at the time he did, Sizemore was guilty of such contributory negligence as to relieve the L. & N. R. Co. of responsibility for his death, which was due to his own inexcusable lack of care and precaution for his own safety in exposing himself to a most hazardous situation, without any necessity for so doing and without taking any precautions. The noise we have referred to probably confused his hearing so that his case was much like the case of Smith's Adm'r v. C., N. O. & T. P. R. Co., 146 Ky. 568, 142 S. W. 1047, 41 L. R. A. (N. S.) 193. In that case, Smith, who was a deaf mute, did not look. The noise on this occasion rendered Sizemore's ears just as unavailing for his protection as Smith's ears were for him. Therefore what we said in the Smith case is of controlling applicability in this case. We were discussing there the question of what constituted ordinary care upon the part of a person who could not hear, and we said this:

"How may we learn of the approach of a train? Three of his senses are not available at all for such a purpose. His fourth sense, that of hearing is entirely gone. Therefore, he must use his eyes—he must look. In other words, the duty of using ordinary care to learn of the approach of a train, imposes upon the traveler the duty of using the only means by which he can discover its approach. Nor is there anything in this rule that conflicts with the attitude of this court towards the 'Stop! Look! and Listen!' doctrine. That doctrine has never been followed in this state, because it exacts too high a degree of care on the part of the traveler. Under that rule, the traveler must do three things. He must stop. He must look. He must listen. There are times, however, when the requirements of ordinary care may be satisfied with less. Thus in approaching a railroad track, where there is a clear, unobstructed view of the track, for several hundred feet in each direction, a jury may well conclude that

looking in each direction is all that is necessary. In other cases they may conclude that ordinary care required the passenger to stop and look, or to stop and listen, or to look and listen, or to stop, look and listen, depending on the peculiar circumstances of the case. While for this reason, therefore, we have refused to adopt the 'Stop, Look and Listen' rule we have never held that a traveler who made no effort of any kind to discover the approach of a train, exercised ordinary care for his own safety.

"All witnesses agree that the intestate never raised his eyes or looked in the direction from which the train was coming. Had he done so, he would have seen the approaching train. That being true, and having failed to use his eyes, when they alone could have made him aware that the train was approaching, he was necessarily guilty of contributory negligence, for notwithstanding the negligence of appellee in running its trains too fast, he would not have been injured had he not gone upon the track immediately in front of the train without making the slightest effort to discover its approach."

In the Smith case we approved the action of the trial court in directing a verdict for the defendants. In the case of Illinois Central R. Co. v. Bozarth's Adm'r, 212 Ky. 426, 279 S. W. 636, we held the trial court erred in not granting a motion for a directed verdict where it was shown that Bozarth was killed by stepping on to the railroad track immediately in front of an approaching train without looking. In the case of Neal v. Ashland-Ironton Transfer & Ferry Co., 201 Ky. 332, 256 S. W. 721, we held that the action of Mrs. Neal in attempting to step from the ferry to a landing float before the boat had come in contact with the float was guilty of such contributory negligence that she could not recover for the injuries she sustained in so doing, and we approved a directed verdict against her. This opinion finds support in the case of Hummer's Ex'x v. Louisville & N. R. Co., 128 Ky. 486, 108 S. W. 885, 32 Ky. Law Rep, 1315 (Hummer was a deaf man using a crossing); also Louisville & N. R. Co. v. Cummins' Adm'r, 111 Ky. 333, 63 S. W. 594, 23 Ky. Law Rep. 681 (Cummins was a drunken man killed near a railroad crossing), also Louisville & N. R. Co. v. Gardner's Adm'r, 140 Ky. 772, 131 S. W. 787 (another drunken man who was killed at a crossing); and in the case of Louisville & N. R. Co. v. Bays' Adm'x,

220 Ky. 458, 295 S. W. 452, which was a crossing case, where the man killed was going for a doctor, and rushed across the track without looking. In that case we prepared an instruction which imposed on both Bays and the railroad company the equal duty of using ordinary care at the crossing.

These opinions hold that highway travelers at railroad crossings are required to exercise the same degree of care to avoid injury from trains thereat that those in charge of the trains are required to use to avoid injuring the travelers. There can be no doubt that such is the rule and that it is correct, and if ordinary care is imposed upon travelers at public railroad crossings where they have a right to be, a fortiori a man walking a railroad track should be required to exercise at least as much care. A railroad track where a train may be anticipated is a dangerous place to walk, and it certainly is not a place for abstraction.

> "So long as we have the rule of law which makes contributory negligence a defense, instead of measuring the results of the negligence of the defendant and that of the injured party, and fixing liability in proportion of one to the other, the rule must be applied that he whose negligence is the proximate cause of the injury is the one at fault in law, and is the loser."
>
> "Where there is no dispute as to the facts upon which contributory negligence is based, there is nothing to be submitted to the jury." Louisville & N. R. Co. v. Trower's Adm'r, 131 Ky. 589, 115 S. W. 719, 20 L. R. A. (N. S.) 380.

Our conclusion is that where one walks on and along a railway track without looking, with his head down against an approaching train, he is, as a matter of law, guilty of such contributory negligence that no recovery can be had for his resulting injuries.

For the failure of the court to direct the jury to find for the defendant, this judgment is reversed and the cause remanded for consistent proceedings.

The whole court sitting.

Judge Logan dissenting.

DISSENTING OPINION BY JUDGE LOGAN.

The court may say that it has not adopted the stop, look and listen doctrine, but the statement is an assertion only as that doctrine is controlling in the opinion of the court in this case.

It is held in the opinion of the court that although the appellee may have had a right at the place where he was killed as a licensee, and although it may be that appellant owed him the duty to signal the approach of the train and to maintain a lookout for persons on the track at that point, yet it is held because appellee's intestate did not stop, look, and listen he was guilty of contributory negligence as a matter of law, and that the question should not have been left to a jury to determine whether the proved negligence of appellant was the proximate cause of the injury, or whether the proved negligence of decedent contributed to the injury.

This case cannot be distinguished from the ordinary public crossing case. A railroad company is required to give signals of the approach of its trains to a public crossing, and is required to maintain a lookout for persons who may be on or about the track at a public crossing. If a railroad company fails to perform these duties, it is guilty of negligence and it has been written many times that a traveler at the crossing will not be deprived of his right to have his case submitted to the jury because the proof shows that he did not stop, look, or listen.

This court has written many times that, in approaching a place where the public is apt to be using the track of a railroad company as licensees, the railroad company owes the duty to signal the approach of its train, and to maintain a lookout for persons who may be on or about the track. The opinion of the court in this case holds that a violation of these duties by the railroad company does not make a case for the jury if the decedent did not stop, look, and listen, or at least that is the effect of the opinion beyond all doubt.

If this court is desirous of abandoning the long established rule that the stop, look, and listen doctrine does not prevail in this state, the opinion should be direct and certain about it and overrule all the opinions holding that the doctrine does not apply in this state. There is no good reason to depart from such opinions by piecemeal. It is a long process and confusing to the courts and lawyers throughout the state. If the court

wants to adopt the stop, look, and listen doctrine in this
state, it should be done at one stroke without the slow
and tedious process of evolution.

Until the court adopts the stop, look, and listen doc-
trine in this state, I think the correct rule in cases such
as this is that where negligence is shown on the part of
the railroad company in failing to give signals or to'
maintain a lookout, and it is shown that the plaintiff is
guilty of negligence, no court may say, as a matter of
law, that the negligence of one was the proximate cause
of the injury, or that the negligence of the other con-
tributed to the injury. Such a state of facts makes a
question for the jury.

We have held in no case that I can find that a failure
to give an instruction on contributory negligence was
not error when the proof established negligence on the
part of the plaintiff. If, however, the court may deter-
mine as a matter of law that the negligence of the plain-
tiff contributed to the injury, although negligence is
shown on the part of the defendant, it follows as a matter
of course that the court may hold, as a matter of law,
that the negligence of the defendant was the proximate
cause of the injury, although negligence is shown on the
part of the plaintiff. The same rule must apply to both.

If negligence on the part of the defendant is estab-
lished and negligence on the part of the plaintiff is also
established, it becomes a question for the jury to deter-
mine whether the negligence of the defendant was the
proximate cause and resulted in the injury notwithstand-
ing the negligence of the plaintiff. If the jury decides
contrary to the weight of the evidence, a new trial may
be granted on that ground, and probably that should
have been done in this case, but the granting of a new
trial because the verdict is not supported by the evidence
is altogether a different thing from the giving of a
peremptory instruction to find for the defendant because
the plaintiff has been guilty of negligence.

The Smith case is the basis of the court's opinion in
this case and the opinion in that case was correct on the
facts, but the opinion in that case had been perverted
from time to time. The person killed in the Smith case
was a deaf mute. He could not hear the approach of
the train nor the signals given. A lookout was main-
tained. The failure to hear the signals did not show
that the negligence, if any, on the part of the railroad
company was the proximate cause of the injury. The

giving of the signals would have been no benefit to the deaf mute. It was his duty, because he could not hear, to exercise his other faculties. If the railroad company was negligent, its negligence could not be the proximate cause of the injury because the man who was killed knew nothing of the negligence, and the negligence in no way affected him. That opinion has been so perverted that it appears that the stop, look, and listen doctrine applies to defectives, and does not apply to those in possession of all of their faculties. This court never intended to establish any such rule. It would be an inhuman rule to hold that the unfortunate were held to a more strict accountability than the fortunate. The proper rule in such cases, and all that this court had ever intended to hold, is that the negligence of the railroad company in such cases was not the proximate cause of injury as the performance of its duties by the railroad company would have had no effect one way or the other because the defective would not have known of the performance of the duty.

Having these views of the law in cases such as this, I must respectfully dissent from the opinion of the court.