## Taylor's Administrator v. Kentucky & Tennessee Railway Company et al.

(Decided April 26, 1929.)

R. L. POPE and H. M. CLINE for appellant.

WILLIAM WADDLE for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

On October 17, 1927, Beckham Taylor was struck and killed by a train operated by the Kentucky & Tennessee Railway Company. To recover damages for his death his administrator brought this action against the railway company and its engineer, C. W. Porter, and, after hear-

ing all the evidence of both plaintiff and defendants, the trial court directed a verdict for the defendants. Judgment was entered accordingly, and the administrator appeals.

The accident occurred about 900 feet east of a public crossing and near the tipple of a coal mine operated by the Fidelity Coal Company. The right of recovery was grounded upon the theory that the habitual and continuous use of the railroad track by the public at the point where the deceased was killed was sufficient to put upon the company, in the operation of its trains, the duty of anticipating the presence of persons on the track and the further duty of exercising care to avoid injury to them by keeping a lookout and giving warning of the approach of its trains.

The defendants rested their defense to the action upon the ground that the deceased was a trespasser and consequently the only duty owing to him was to exercise reasonable care to prevent injury to him after his peril was discovered by the persons in charge of the train, and also on the ground of contributory negligence.

The railroad is located between two mountains and a short distance north of Rock creek. Between Rock creek and the main line of the railroad is a public road, and over the creek is a foot bridge. On the south side of Rock creek there are located 12 or 14 houses occupied by miners, and about one-fourth of a mile east of the point where the accident occurred is the mining camp of Fidelity, containing a population of 400 or 500 people. About a mile west is the mining camp of Exodus, with a population of 40 or 50. The mine tipple of the Fidelity Coal Company is north of the main track of the railroad and over a side track, which is 8 feet from the main track. The coal that goes into this tipple is brought to it by means of a conveyor, which is constructed from the mouth of the mine about 100 feet up the mountain side.

The evidence shows that some of the occupants of the house across Rock creek would go to the tipple for the purpose of carrying coal for domestic use and in doing so would cross the main track of the railroad. On the morning that Taylor was killed he had carried one sack of coal from the tipple to his home and had returned to the tipple for another sack of coal. He filled the sack, threw it across his right shoulder, stepped out from behind the tipple, and walked upon the railroad track. The point

where he procured the coal was not in view of persons on the approaching engine and was only 8 feet from the main track. Just before Taylor stepped on the track a gasoline-propelled car had passed along the track going east. Henry Roberts, a witness for the plaintiff, saw Taylor in the middle of the track with the coal on his shoulder looking to the east in the direction of the motor-car when the train approaching him from the west was only 16 feet away. Two witnesses introduced by the defendant say that Taylor walked upon the track immediately in front of the engine and when the engine was not more than 5 or 6 feet from him. His head was turned to the east, which was in the opposite direction from which the train was approaching.

All of the witnesses agree that the train whistled for the public crossing 900 feet west of the tipple. Two or three witnesses for plaintiff say they heard no signals given after the train passed the crossing, but a number of witnesses for the defendants, including the engineer, fireman, and brakeman who were on the engine, testified that the bell was ringing continuously and that the whistle was blown between the crossing and the tipple. All conceded that the train was traveling at a moderate rate of speed.

In view of our conclusion that Taylor was guilty of such contributory negligence as to preclude plaintiff from a recovery, it is unnecessary to determine whether or not he was a trespasser.

The conveyor at the tipple was in operation when the train passed that struck Taylor, and the witnesses say that when in operation it made more noise than an approaching train. In Smith's Adm'r v. Cincinnati, N. O. & T. P. R. Co., 146 Ky. 568, 142 S. W. 1047, 41 L. R. A. (N. S.) 193, Smith, who was deaf, was struck by a train while on the track at a point where he was a licensee. Notwithstanding negligence in the operation of the train, the giving of a peremptory instruction for the defendant was approved, this court saying:

> "But this conclusion is not decisive of the case, for the rule is that where the railroad company is guilty of negligence in running its train too fast, and the party injured or killed is himself negligent in going upon the track in front of the approaching train, the injury is the result of the concurrent neg-

132

ligence of both parties, and there can be no recovery for the negligence of the railroad company, because but for the negligence of the party injured, he would not have been injured. Hummer's Extx. v. Louisville & Nashville R. R. Co., 128 Ky. 492 (108 S. W. 885, 32 Ky. Law Rep. 1315.) The same rule is laid down in Southern Railway in Ky. v. Winchester's Extx., 127 Ky. 144 (105 S. W. 167, 32 Ky. Law Rep. 19.)

"The question then is, was the intestate guilty of contributory negligence? The accident happened at a time and place not only where the presence of persons on the railroad track might have been reasonably anticipated, but the passing of the trains might have been reasonably anticipated. Therefore, the same rule applies as in the case of a street crossing where the railroad and traveler are under reciprocal duties, requiring the railroad on the one hand to keep a lookout, to give reasonable warning of the approach of the train, and to have the train under reasonable control; and requiring the traveler on the other hand, who is about to cross the track, to use ordinary care to learn of the approach of the train and keep out of its way. Southern Railway in Kentucky v. Winchester's Extx., supra. Now what is ordinary care, under such circumstances, on the part of a person totally deaf? How may he learn of the approach of a train? Three of his senses are not available at all for such a purpose. His fourth sense, that of hearing, is entirely gone. Therefore, he must use his eyes—he must look. In other words, the duty of using ordinary care to learn of the approach of a train imposes upon the traveler the duty of using the only means by which he can discover its approach. Nor is there anything in this rule that conflicts with the attitude of this court towards the 'Stop, Look, and Listen' doctrine. That doctrine has never been followed in this state, because it exacts too high a degree of care on the part of the traveler. Under that rule, the traveler must do three things. He must stop. He must look. He must listen. There are times, however, when the requirements of ordinary care may be satisfied with less. Thus, in approaching a railroad track, where there is a clear, unobstructed view of the track for several hundred

feet in each direction, a jury may well conclude that looking in each direction is all that is necessary. In other cases they may conclude that ordinary care required the passenger to stop and look, or to stop and listen, or to look and listen, or to stop, look and listen, depending on the peculiar circumstances of the case. While for this reason, therefore, we have refused to adopt the 'Stop, Look, and Listen' rule we have never held that a traveler who made no effort of any kind to discover the approach of a train, exercised ordinary care for his own safety."

In Louisville & N. R. C. v. Sizemore's Adm'r, 221 Ky. 701, 299 S. W. 573, the judgment was reversed for the failure of the trial court to direct a jury to find for the defendant. The facts there were somewhat similar to the facts here, and, in approving the rule announced in the Smith case, we said:

"Conceding, but not deciding, that this track was used by a sufficient number of people to require the railroad company to anticipate the presence of pedestrians upon it, still, in using it as he did, at the time he did, Sizemore was guilty of such contributory negligence as to relieve the L. & N. R. Co. of responsibility for his death, which was due to his own inexcusable lack of care and precaution for his own safety in exposing himself to a most hazardous situation, without any necessity for so doing and without taking any precautions. The noise we have referred to probably confused his hearing so that his case was much like the case of Smith's Adm'r v. C., N. O. & T. P. R. Co., 146 Ky. 568, 142 S. W. 1047, 41 L. R. A. (N. S.) 193. In that case, Smith, who was a deaf mute, did not look. The noise on this occasion rendered Sizemore's ears just as unavailing for his protection as Smith's ears were for him. Therefore, what we said in the Smith case is of controlling applicability in this case."

Here Taylor was in a place of safety, and, without looking in the direction of the approaching train, but with his head turned in the opposite direction, he stepped upon the track only a few feet in front of the moving train. The operatives in charge of the train could have done nothing then to avert the collision.

134

This court has frequently held that highway travelers at railroad crossings are required to exercise the same degree of care to avoid injury from trains thereat that train operatives are required to exercise to avoid injuring such travelers. Louisville & N. R. Co. v. Cummins' Adm'r, 111 Ky. 333, 63 S. W. 594, 23 Ky. Law Rep. 681: Louisville & N. R. Co. v. Gardner's Admr., 140 Ky. 772, 131 S. W. 787. If such is the rule as to travelers at public crossings, a fortiori should the track trespasser or licensee be required to exercise at least as much care.

The evidence shows that decedent took no precaution whatever for his own safety, but was wholly inattentive thereto. He was in a place of safety, and if the noise of the conveyor interfered with his hearing, and it is conceded by appellant that it did, then it was incumbent upon him in the exercise of ordinary care for his own safety to use the only means by which he could discover the approach of the train—that of looking. Ordinarily the question of contributory negligence is one for the jury, yet where the undisputed evidence shows, as it does here, that the decedent was guilty of such negligence that the injury would not have otherwise occurred, a directed verdict for the defendant is proper. Smith's Adm'r v. C., N. O. & T. P. R. Co., supra; Illinois Central Railway Co. v. Bozarth's Adm'r, 212 Ky. 426, 279 S. W. 636; Holder v. Illinois Central R. Co., 217 Ky. 759, 290 S. W. 698.

Wherefore the judgment is affirmed.