## Taylor v. Patterson's Adm'r.
(Decided March 1, 1938).

416

C. G. YAGER, JOHN T. DIEDERICH and JOHN STANLEY for appellant.

FRANK C. MALIN and WILSON & ROBINSON for appellee.

OPINION OF THE COURT BY JUDGE BAIRD—Affirming.

William Taylor appeals from a judgment rendered against him in the Boyd circuit court on December 3, 1936, for $7,000 damages in favor of Charles R. Holbrook, Jr., administrator of the estate of Billy Patterson, deceased. Holbrook as administrator sought damages in the sum of $25,000, because of the injury of Patterson which produced his death.

Patterson was a negro boy less than seven years of age. William Taylor owned and operated a jitney bus under a license according to the laws and ordinances of the city of Ashland, Boyd county, Ky. On April 16, 1936, Patterson was received by Taylor as a passenger for the purpose of his transporting him (Patterson) from his home to his school and then from school to his home. The school was located in Ashland and known as the Booker T. Washington School. On that morning Taylor agreed and undertook to transport the boy to and from the school. In carrying out his agreement he transported him to the school in the morning, and in the afternoon of the same day about 3 o'clock received the boy again as a passenger for the purpose of conveying

him to his home together with other colored children who were attending the same school and whom he was transporting from the school to their respective homes. In doing so appellee alleges in his petition that Taylor by his carelessness and negligence discharged the boy from his bus at the end of the journey from the school into and on the opposite side of Greenup avenue from where his home was located to which he agreed to carry him, and into and at a place where the motor vehicular traffic was great, and at a place on the street where the traffic had been long and continuously heavy, and was so at that time; that motor vehicles were at that time going in both directions on said street in large numbers, thereby rendering the street dangerous to pedestrians in crosssing and extremely dangerous to one of the age of Patterson; that by reason of the age of the deceased he was too young to know or appreciate to a reasonable degree the danger in crossing the street used as it was by the heavy and passing traffic; that appellant knew that the deceased in order to go to his home would attempt to cross said street; that the point where the deceased was discharged was not a safe place; that when he discharged the deceased at this place so described, Ollie Howard, Bill Howard, Bert Howard, and Rowe Litteral, who were traveling upon said street and coming in the direction of the point where the boy was discharged by Taylor, carelessly and with gross negligence operated the motortruck which they were in at the time for their common purpose so as to cause the truck to run against and over Patterson, injuring him so severely that he died within an hour thereafter; that appellant Taylor, Ollie Howard, and those with him were on that occasion and at the time and place jointly and severally guilty of negligence and the negligence of them, and each of them contributed to and concurred in producing and bringing about the injury that caused the death of Patterson; that their joint and concurrent negligence was the proximate cause of his death. Appellant by answer denied the negligence as well as all material allegations of appellee's petition, and further pleaded by way of answer the contributory negligence on the part of Patterson and the negligence of Ollie Howard, etc., as being the proximate cause of Patterson's death.

The grounds of the appeal may be thus stated: **(1)**

There was no agreement as to a specific place of the discharge of Patterson; and (2) was the place where he was discharged a safe place?

In the beginning, after carefully reading the evidence found in the record, we are confronted with certain uncontroverted facts, namely, that appellant Taylor was the owner and operator of a jitney bus and a public carrier of passengers; that the transportation of his passenger Billy Patterson was for an agreed fee; that Taylor was to transport him from his home to the school in the morning and from the school to his home in the afternoon; that the passenger Billy Patterson was a child, a few months less than seven years of age; that Greenup avenue, in the city of Ashland, where the passenger was discharged and injured was a busy and much-used street by motor propelled vehicles of different construction; that neither the mother nor any other person was present to receive the boy when he was discharged from the bus; that the place of discharge was on the opposite side of the street or avenue from the home of Patterson; that the sidewalk where Patterson was discharged was a safe place for him to alight; that for him to reach his home from that point he must of necessity cross the street; that the danger in doing so was obvious and apparent to Taylor; that Taylor knew of the danger because in his evidence he said:

"I stopped in front of his house and put him out on the sidewalk and like I always did I cautioned him to be careful and to watch out about crossing. Generally, I stayed there and saw the child go across, but he got out and stopped like he was looking at something else and didn't go straight on. I backed out and drove on down the street then."

From those unchallenged facts, did Taylor, the operator of the jitney bus, deliver the boy at a safe place? It must be kept in mind that this jitney bus is not such a vehicle used for transporting passengers for hire, that is operated upon a permanent track as a passenger train or a street car, nor does it run from one certain point to another, nor does it have any special platform or place to discharge passengers; but, on the other hand, Taylor in operating his jitney bus could stop at any place where it might be necessary or safe in fulfilling his duty to the passenger as a public carrier, when not in violation of some fixed statute. This

rule we recognized in Hensley v. Braden, 262 Ky. 672, 91 S. W. (2d) 34, 38, insofar as it affected adults, as follows:

"The duties of the owner or operator of a taxi to his passengers are distinguishable from those of a commercial railway, in so far as the duty rests upon him to furnish safe passage to and from a car. Cooke v. Elk Coach Line (Del. Super.) 180 A. 782 [supra]. From the very nature of things, the operator of a taxi cannot discharge those duties with respect to a passenger which the law imposes upon a commercial railway. The owner of a taxi has no control over the public highway or the traffic on it. He has no station or platform and can erect none upon the highway. From the one side of the highway to the other is a public place open to travel to all, and over it the operator of a taxi has no control or jurisdiction. Choquette v. Key System Transit Company, 118 Cal. App. 643, 5 P. (2d) 921. The operator of a taxi who permits a passenger to alight from a car at a place not ordinarily used in discharging passengers and where many vehicles are accustomed to pass is not bound to warn the passenger of the danger of passing traffic nor to protect him from such danger after he has left the car. The fundamental reason of this rule is, the conditions which constitute the danger to the passenger are 'as observable by,' and 'apparently as obvious to, him' as to the owner or operator of the taxi. Smith's Adm'r v. Cincinnati, N. O. & T. P. Railroad Company, 146 Ky. 568, 142 S. W. 1047, 41 L. R. A. (N. S.) 193; Louisville & Nashville Railroad Company v. Sizemore's Adm'r, 221 Ky. 701, 299 S. W. 573; Malzer v. Koll Transportation Company, 108 N. J. L. 296, 156 A. 639. Also, see, Cooke v. Elk Coach Line, supra, and Louisville Railroad Company v. Breeden, 257 Ky. 95, 77 S. W. (2d) 368."

If Patterson at the time had been an adult of mature years and in possession of the faculties of a normal adult, the court would have no trouble in reaching a conclusion quickly as to the liability of Taylor, but we have here a child passenger to deal with, under seven years of age, just returning from school, full of life, with great anxiety, no doubt, as is usual in a child of that

age, to reach his home and mother quickly, possibly his childish appetite was gnawing heavily, and his thoughts only upon things of that character and not upon the dangerous surroundings that were obvious to an adult, and possessing at that age but little discretion or judgment or ability to perceive surroundings or situations that would produce injury or death, should he undertake to cross the street. This condition of the child passenger was known to Taylor, as was also the heavily traveled street, and the danger in crossing same to reach the home of the decedent was necessarily obvious and plain to be seen by appellant. Such a state of facts as that differentiates this case from the situation of an adult passenger. Under the circumstances and surroundings here, these facts being uncontroverted, it is not reasonable to reach any other conclusion than that the duty of Taylor did not end when the passenger Billy Patterson alighted upon the sidewalk, but under his special contract Taylor's duty as a carrier continued and required that he exercise the highest degree of care for the boy's safety until he was safely across Greenup avenue to the side where his mother's home was located, where he was out of danger of injury of the passing traffic.

As was said in the case of Bransom's Adm'r v. Labrot, 81 Ky. 638, 50 Am. Rep. 193:

"It is a reasonable and necessary rule that a higher degree of care should be exercised toward a child incapable of using discretion commensurate with the perils of his situation than one of mature age and capacity; hence, conduct which toward the general public might be up to the standard of due care, may be gross and wilful negligence when considered in reference to children of tender age and immature experience."

Under section 2739g-48, Kentucky Statutes, appellant under a certain state of facts would have been forbidden to have driven his jitney bus to the sidewalk on the left side of the street, the way his bus came into Greenup avenue, to discharge the passenger, had the street been outside of the city limits. But we think, in operating the bus and stopping on the left side of the sidewalk next to the passenger's home, under certain conditions would have been all right, especially if it did not interfere with the traffic or use of the street of

persons using the same at that time. The provisions of that section of the statute, supra, relating to the stopping of motor vehicles on a highway, does not apply to a city street. There is no proof showing that there was an ordinance of the city preventing Taylor from discharging Patterson on the sidewalk next to his home. Robinson Transfer Company v. Turner, 244 Ky. 181, 50 S. W. (2d) 546. There is no certain point or station in operating a bus for discharging passengers. It would have required little time and effort for Taylor to have driven into Greenup avenue from a street, that would have enabled him to have discharged Patterson on the sidewalk next to his mother's home; then the necessity of crossing the street to his mother's home would have been avoided, and the danger of reaching his home would not have been encountered; or he could have, with little effort or loss of time, turned his bus around at some convenient place, and then driven on the right side of the sidewalk next to the home of the deceased, without submitting the deceased to the danger of crossing the street. The case of Pelfrey v. Snowden, 267 Ky. 432, 102 S. W. (2d) 352, recently rendered by this court, is cited in support of the contention of appellant as authority. In that case a directed verdict under the state of the pleadings and facts as there developed was approved. In that case the passenger was an infant of about 16 years of age, but the proof there was that the operator of the school bus stopped on the right or the northerly side of the public highway. The girl who was injured with several other pupils alighted from the bus from the door near the front. It was then getting dark. She walked to the rear of the bus and started across the road behind the bus for the purpose of going west toward her home, when she was struck and injured by Willard Brewer, who was eastbound and running without lights. The peremptory instruction was approved in that case because no negligence as alleged in the petition was shown by the evidence, that the only theory to predicate negligence against the driver of the bus was to assume that it was negligence on his part when he permitted the girl to alight from his bus where she did when the evidence showed that the driver or operator of the car had no knowledge of the approach of the Brewer car and when the car approached without lights and no evidence to show its speed.

In the instant case, the facts as to the danger of

Patterson were not only obvious to Taylor, but the evidence was to the effect that the passing motor vehicle that killed the boy, at the time was running toward Taylor's bus about 30 miles per hour; that a witness who was operating another truck followed the truck that injured the boy, and saw it strike him and injure him which produced his death. This occurred about 3 o'clock in the afternoon. There were no intervening objects that prevented Taylor from seeing the rapidly moving truck that struck and injured the boy. The movement of the truck upon the highway could have been seen by Taylor, had he exercised that degree of care for the boy's safety that was imposed upon him by law. It is in evidence that Taylor, when testifying concerning the danger that was apparent in crossing the street, said:

> "Yes sir, it is always dangerous to let a child out on the opposite side of the street, but that is a chance that my grandchildren or any other child had to take that went to school or any place. It is dangerous for anybody to have to cross the street and especially a child."

From the above answer, Taylor knew of the dangers that might result, especially to a child of the age of Patterson, in attempting to cross the street. In the cases involving the question as to what constitutes a safe place to discharge a child, and especially one as young as Billy Patterson, depend upon the particular facts of each case. The use of a taxi or jitney bus as a public carrier of passengers is a modern method of travel. In the instant case, Taylor, in substance, stated that he had been engaged in transporting colored passengers in the city of Ashland for three or four years; that he was well acquainted with the streets and the location of his patrons; that it was his agreement with the mother of Patterson to transport him from school each day, but he did not, as he stated, agree to discharge him upon the sidewalk on Greenup avenue near to the home of the mother at all. We place little effect on the statement that there was a special contract between the mother and Taylor to deliver the boy directly at his home, but the court is of the opinion that when Taylor accepted Patterson as a passenger for hire, he owed to him the highest degree of care and skill which reasonably may be expected of intelligent and prudent persons engaged in such a business. He admits that he had been so en-

gaged for three or four years. He evidently was no novice in operating a bus.

Our attention is called to the case of Roden v. Connecticut Company, 113 Conn. 408, 155 A. 721, 722, where the facts are more nearly the same as in the instant case of any that our attention has been directed. In that case a boy seven years old was riding as a passenger in a bus. When the bus reached the end of its run, the operator stopped it on the left side of the road so that a part of the bus was on the shoulder of the roadway. The only door where passengers could pass out was on the right side of the bus. The little boy passed out and descended the steps to the roadway, which was a safe place to alight. He was struck by a passing motortruck and received serious injuries. In that case the court refused a peremptory instruction, and in discussing the duty of the carrier to passengers, and especially to a young child, said:

"The duty of a common carrier of passengers includes an obligation to furnish them a safe place in which to alight, as far as that place is provided by it or is affected or conditioned by the movement of the vehicle, and that duty is only satisfied if it exercises the highest degree of care and skill which reasonably may be expected of intelligent and prudent persons engaged in such a business, in view of the instrumentalities employed and the dangers naturally to be apprehended. St. John v. Connecticut Company, 103 Conn. 641, 644, 131 A. 396; Belledeau v. Connecticut Company, 110 Conn. 625, 627, 149 A. 127. An automobile bus is able to move or stop in the street at the will of its driver, and the safety of the place he offers its passengers to alight may be affected or conditioned by the passing traffic. Cleveland-Akron-Canton Bus Company v. Walker, 30 Ohio App. 411, 165 N. E. 373. The care to be exercised toward a young child traveling by himself must be proportioned to the degree of danger inherent in his youth and inexperience. Brennan v. Fair Haven & W. R. Co., 45 Conn. 284, 298, 29 Am. Rep. 679; Rohloff v. Fair Haven & W. R. Company, 76 Conn. 689, 694, 58 A. 5; Boland v. Connecticut Company, 83 Conn. 456, 457, 76 A. 1005."

The same doctrine or rule was in effect approved

in Machenheimer v. Falknor et al., 144 Wash. 27, 255 P. 1031.

Under the proof Taylor failed to discharge Patterson, a boy of his age, at a place of safety, even if the sidewalk where he was discharged was safe had the boy remained there.

A "place of safety," as contemplated by the courts in considering such a phrase, is such a place as the passenger may use and occupy with relation to the place of destination fixed under the contract of carriage, and in discharging the boy on the side of the street opposite his home, although he would have been safe if he had remained there, the appellant did not select a safe place to discharge him, as he was required to take into consideration the location of the place of destination, his home, the age of the boy, and the known hazards to be encountered in crossing the street to the boy's home, the place of destination. See Kentucky & I. Bridge Company v. Buckler, 125 Ky. 24, 100 S. W. 328, 30 Ky. Law Rep. 1086, 8 L. R. A., N. S., 555, 128 Am. St. Rep. 234; Roden v. Connecticut Company, supra; Machenheimer v. Falknor et al., supra.

Counsel for appellant criticizes to a slight degree instructions Nos. 1 and 4, given by the court. Having reached the conclusion that the evidence is sufficient to support the verdict of the jury, we think the court fairly and aptly by the instructions given, embodied the law of the case.

Wherefore, the judgment is affirmed.

Whole court sitting.